State, ex rel. Ridgell, v. Hall.

STATE, EX REL. WILLIAM S. RIDGELL, RELATOR, V. GEORGE
E. HALL, STATE TREASURER, RESPONDENT.*

FILED DECEMBER 3, 1915.  No. 19407.

1. **States:** SPECIAL FUNDS: APPROPRIATION. The fund created by the provision of chapter 23, Rev. St. 1913, and set apart by section 2511 of that chapter as a special fund for the maintenance of the office of state fire commissioner and the expenses incident thereto, may be paid out by the state treasurer on warrants properly drawn by the auditor of state for that purpose without a biennial appropriation by the legislature.

2. **Statutes:** TITLE: SPECIAL FUNDS. Section 19, art. III of the Constitution, does not apply to the use of that fund when the same has been collected.

3. **Mandamus:** WARRANTS: FIRE COMMISSION EXPENSES. The act creating that fund was intended as a continuing appropriation for the payment of the salaries and expenses of the state fire commissioner, and the treasurer may be required by mandamus to pay warrants properly drawn on that fund when collected and in his hands.

Original proceeding in mandamus to compel respondent to countersign and pay a warrant for the salary of relator as deputy state fire commissioner. *Writ allowed.*

*Willis E. Reed, Attorney General,* and *George W. Ayres,* for relator.

*Burkett, Wilson & Brown* and *Berge & McCarty,* for respondent.

*E. J. Hainer, amicus curiæ.*

BARNES, J.

This is an action in mandamus to require the respondent, the state treasurer, to countersign and pay a warrant drawn by the auditor of public accounts for $200 in favor of the relator as chief deputy fire commissioner, drawn on what is known as the fire commissioner's fund, in payment of the statutory salary and the actual and necessary ex-

*Rehearing denied. See opinion, p. 95, *post.*

penses of the relator for the month of September, 1915, in the due and ordinary conduct of his office.

There is no disputed question of fact in this case. This is made evident by the following recital in the brief of the respondent: "The respondent by his answer has endeavored to relieve the state of the proof of the essential facts in this case, and relies upon the want of statutory authority to countersign or pay the warrant involved in this case. The respondent has endeavored to facilitate the presentation of this matter to the court in order that he might be advised as to his duties as state treasurer in reference to the fund in controversy. In the construction of the law, as he finds it, he is unable to find any authority that would justify him in countersigning or paying the warrant involved, and he therefore joins the relator in asking for a construction of the constitution and the statutes involved in this case."

The real question for our determination is whether the respondent is required to pay the warrant in question out of the fire commissioner's fund in his hands, without a specific act of the legislature appropriating said fund during each biennium to the payment of the salary and expenses of the officers administering the state fire department.

Chapter 23, Rev. St. 1913, creates a fire commission, the affairs of which shall be conducted by a fire commissioner and such subordinates as are provided for by that chapter. It makes the governor the fire commissioner, and provides for the appointment of a chief deputy, and defines his duties.

By section 2509, Rev. St. 1913, it is provided: "The chief deputy state fire commissioner shall receive an annual salary of two thousand dollars and each assistant deputy fire commissioner one thousand five hundred dollars, payable monthly, and their actual and necessary traveling expenses while engaged in the duties of their office. The fire commissioner shall employ clerks and assistants and incur such other expenses as may be neces-

sary in the performance of the duties of his office, not to exceed, including salaries, such sum as may be paid into the state treasury in the manner hereinafter provided."

Section 2510, Rev. St. 1913, provides: "For the purpose of maintaining the department of state fire commissioner, and paying the expenses incident thereto, every fire insurance company except Farmers' Mutuals, whether upon the stock or mutual plan, doing business in the state of Nebraska, shall pay to the state treasurer in the month of January, annually, in addition to the taxes now required by law to be paid by such companies, three-eighths of one per cent. on the gross fire premium receipts, after deducting cancelations and reinsurances, of such companies on all business done in Nebraska the year next preceding, as shown by their annual statements, under oath, to the state auditor, which sum shall be paid on or before the first day of January of each year, and no certificate shall be issued by the auditor to or on behalf of any such company, authorizing it to do or continue business in this state while any such percentage or tax remains due and unpaid."

Section 2511, Rev. St. 1913, provides: "The state treasurer shall hold the money so received into the treasury as a special fund for the maintenance of the office of state fire commissioner, and the expenses incident thereto. The state fire commissioner shall keep on file in his office an itemized statement of all expenses incurred by his department, and shall approve all vouchers issued therefor, before the same are submitted to the auditor of state for payment, which vouchers shall be allowed anl paid in the same manner as other claims against the state."

It seems clear that the legislature, by the sections of chapter 23 quoted above, not only created a new department of government known as the state fire commissioner's department, but also designated its officers, fixed the amount of their salaries, and provided a special fund for the payment of such salaries and the expenses of ad-

ministering the department. The fund thus collected may be designated as a trust fund, which, by the terms of the act itself, cannot be used for any other purpose until further legislative action. It is conceded that this fund is amply sufficient for the payment of the warrant in question. Indeed, it is admitted that there is a large surplus of this fund in the hands of the respondent, who contends that he has no authority to pay the warrant in question because the legislature, at its 1915 session, made no specific appropriation of the fund for the payment of the relator's salary and the expenses of administration.

In *Shattuck v. Kincaid*, 31 Or. 379, speaking of appropriations, the court said: "And this gets us back to the original proposition that an appropriation is the setting aside or designation by express direction or by implication of particular funds for the discharge of definite and specified obligations or liabilities, which, however, may be in contemplation, such as will arise in the future, and the appropriation may be continuing in its nature, but the legislative intent to have funds always ready and applicable to their prompt discharge at stated times works out the appropriation, and nothing short of it can have such an effect."

*Commonwealth v. Powell*, 249 Pa. St. 144, was a like case with the one at bar. The application was for a writ of mandamus to compel the auditor general to draw his warrant on the state treasurer of the state of Pennsylvania in favor of the National Limestone Company on a fund received from the registration of license fees for automobiles, which was appropriated by the terms of the act imposing the fees for the maintenance and repair of the state highways. The opinion of the supreme court of Pennsylvania in that case is instructive and practically determines the questions involved in the case at bar. The constitution of Pennsylvania (Const., art. III, sec. 3) provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." Section 15, art. III of

the Constitution of that state, provides: "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the commonwealth, interest on the public debt and for the public schools; all other appropriations shall be made by separate bills, each embracing but one subject." Section 16 of the same Constitution provides: "No money shall be paid out of the treasury, except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof." In discussing the questions arising in that case, the court said: "Clearly the disposition of such fees, paid as an incident to the system of regulation, was a matter closely allied thereto, and naturally to be considered by the legislature in connection with the main purpose of the act. The statute would have been incomplete, had it required the payment of fees, without providing for any disposition of them. No argument should be required to show that provisions for attaining various objects, which relate to the general subject of the bill, may be dealt with by its terms, without laying it open to the charge of containing more than one subject. * * * It is further suggested that the act offends against section 15 of the Constitution which provides that 'all other appropriations shall be made by separate bills, each embracing but one subject.'" The court further said: "There are two answers to this contention, each equally persuasive and both conclusive of the question involved. The first is that the act of 1913 was a separate bill when it was considered by the legislature and it contains only one subject within the meaning of the organic law as we have already pointed out in this opinion; the second is that this provision of the Constitution was only intended to apply to the biennial appropriations made by the legislature out of the general revenues of the commonwealth. It has no application to a fund created for a special purpose and dedicated by the act under which such fund is to be created to a particular use. The appropriation of the fund so cre-

ated continues as long as the act which dedicates it to a particular use remains in force."

We think this answers respondent's contention that no money shall be drawn from the treasury except in pursuance of specific appropriations made by law. In the case at bar, the act itself makes the specific appropriation, and provides: "The state treasurer shall hold the money so received into the treasury as a special fund for the maintenance of the office of state fire commissioner, and the expenses incident thereto." Rev. St. 1913, sec. 2511.

*State v. Cornell,* 60 Neb. 276, cited by respondent in support of his contention, can easily be distinguished from the case at bar. There the appropriation was made from the funds of the state treasury raised by general taxation, and was a part of the general revenue of the state. In the case at bar the appropriation is the special fund raised for the special purpose mentioned in chapter 23, and has nothing to do whatsoever with the general revenue belonging to the state.

By the act in question the legislature clearly intended that the money paid to the treasurer under the act should be applied by the deputy commissioner to the payment of his salary and the expenses of managing his office and performing the duties thereof. The right of the legislature to establish such an office and provide the fund for the necessary expenses, as this act does, is not questioned. The taxpayers, or parties upon whom the burden is cast, are not complaining. The fund has been provided and the services rendered. If the statute is unconstitutional, and if the taxpayers could demand a return of the money, they are not doing so. They made no objection to the act when the money was called for from them. They have (if the act is unconstitutional) voluntarily provided this fund. It is a general rule that parties not affected cannot be heard to challenge the constitutionality of an act of the legislature. We do not think that under the circumstances it is the duty of the custodian of the fund to prevent the application of it to the purposes for which it was provided

in accordance with the evident intent of the legislature. We are of opinion that it is the duty of the respondent to countersign and pay the warrant in question.

The writ as prayed for is awarded.

JUDGMENT ACCORDINGLY.

LETTON and SEDGWICK, JJ., concur in the result for the reasons stated in the final paragraph of the opinion.

ROSE and FAWCETT, JJ., not sitting.

The following opinion on motion for rehearing was filed January 15, 1916. *Former judgment adhered to.*

1. Constitutional Law: UNCONSTITUTIONAL STATUTE: MANDAMUS. "Where a supposed act of the legislature and the constitution conflict, the constitution must be obeyed and the statute disregarded. Ministerial officers are, therefore, not bound to obey an unconstitutional statute, and the courts sworn to support the constitution will not by mandamus compel them to do so." *Van Horn v State*, 46 Neb. 62, 83.

2. ———: ———: PARTIES. The court will not declare a statute unconstitutional at the suit of one who is not injuriously affected thereby.

3. ———: ———: ———. The act (Rev. St. 1913, sec. 2500 *et seq.*) plainly directs how the fund created thereby shall be used, and in what manner and by whom it shall be distributed. The only question as to its constitutionality is as to the manner of creating the fund by compulsory payments, and the insurance companies who are required to contribute to the fund are the only parties affected by this constitutional question.

SEDGWICK, J.

We have a very interesting and able brief upon the motion for rehearing. The propositions discussed are: (1) That the legislature cannot enact by general statute a continual appropriation of the funds of the state to some specified purpose. (2) That it is the duty of the state treasurer to guard the funds of the state and to refuse to pay them out to unauthorized parties or for unauthorized purposes. We are satisfied of the correctness of these propositions as stated and discussed in the

brief. The question is whether they apply and are controlling in this case. We do not intend to criticise the state treasurer for hesitating to pay out this money before the act had been officially construed. "Where a supposed act of the legislature and the constitution conflict, the constitution must be obeyed and the statute disregarded. Ministerial officers are, therefore, not bound to obey an unconstitutional statute, and the courts sworn to support the constitution will not by mandamus compel them to do so." *Van Horn v. State,* 46 Neb. 62, 83. But the law is equally well settled that the court will not declare a statute unconstitutional at the suit of one who is not affected thereby. The state treasurer stands for the state and the people thereof. If the state and the people of the state in general are not injuriously affected by this statute, neither they nor their representative, the state treasurer, can require the court to declare the statute unconstitutional. The class of citizens who pay this tax are not challenging its constitutionality. The legislature, no doubt, could authorize the insurance companies to create a fund to be employed in guarding against unnecessary or incendiary destruction of insured property, and could authorize the state treasurer to act as their trustee in preserving and paying out such funds. The statute must be construed as a whole, and must not be so construed as to render it unconstitutional if such construction can be avoided. If it had contemplated only voluntary contributions to the fund, there would be no question of its validity. If the insurance companies who create this fund were protesting that they ought not to be compelled to pay a tax that does not go into the funds of the state so as to be protected by constitutional safeguards in its expenditure, the power of the legislature to compel such payment would be drawn in question. As they have paid the money without objection on their part, such payment is voluntary. The fund is provided for a special purpose and not as for the use of the state. This is clearly what the legislature intended. Therefore

the only question is whether the constitution will permit compelling payment of taxes for such purpose, and those who are required to make such payment are the only ones affected by that question. Our former decision is adhered to.

FORMER JUDGMENT ADHERED TO.

ROSE and FAWCETT, JJ., not sitting.