O. E. ERWIN, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

FILED APRIL 5, 1929. No. 26504.

*George Evens,* for appellant.

*John F. Moriarty* and *Shotwell & Ready, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and DAY, JJ., and BLACKLEDGE and REDICK, District Judges.

THOMPSON, J.

In this suit Erwin, appellant, owner and operator of what is known as a "rolling store," in the city of Omaha, was denied an injunction prohibiting the enforcement by appellees of ordinance No. 12811 enacted by the city council of such city. To reverse this judgment Erwin appeals, and contends, among other things, that the court erred in not finding the ordinance unconstitutional and void for the reason that the occupation tax exacted is unreasonable, arbitrary, discriminatory, prohibitory and confiscatory, and intentionally designed to entirely prohibit operation of a "rolling store" such as he desires to operate. It might be well to describe briefly the "rolling store" here involved; it being the first of its kind ever attempted to be operated in the city. It is a miniature store, stocked with all kinds of merchandise usually carried in a grocery store, placed on an automobile truck chassis, so that the store can be moved from house to house, and the merchandise sold therefrom the same as it would be sold from a store at a fixed location. The vehicle in question is about 16 feet long by 6 feet wide, and has an aisle down the center for the use of customers. The scheme of the business is to give purchasers cash and carry prices at their doors.

It is admitted that the ordinance was legally passed and approved; that it provides, in substance, that persons operating rolling stores in the city of Omaha are "ped-

dlers," and shall first procure a permit and pay therefor a fee in the sum of $10 a month, and pay in addition thereto an occupation tax in the sum of $15 a day, "provided the payment of such tax ($15 a day) at the end of each month rather than in advance may be secured by bond with approved sureties in double the amount of such tax per month, conditioned for the payment of such tax at the end of the month;" and further provides that any person who fails to pay the tax when due shall be liable to a fine of not less than $5 nor more than $50, and the court may commit to jail any person against whom such fine shall be assessed until the fine is paid. A penalty is also imposed for failure to obtain the permit. Erwin, notwithstanding the provisions of such ordinance, and with full knowledge thereof, began operating a rolling store on the streets of such city without procuring a permit therefor and paying the occupation tax imposed, was arrested, found guilty and sentenced, to reverse which judgment he appealed to the district court, where such appeal is still pending. He then instituted this action.

The term "peddling" is defined in section 2 of the ordinance as follows: "The going about in the city from house to house, or from place to place, over and through the streets and public places of the city, and selling or offering to sell at retail, and forthwith to deliver, any goods, wares and merchandise of whatever kind, nature and character, * * * either from wagons, carts or vehicles of any character or from packs carried upon the person, or otherwise transported. Any person peddling, as hereinabove defined, shall be known and termed as a 'peddler' for the uses and purposes of this ordinance. Peddlers using or employing wagons, carts or vehicles of any kind and character and carrying on any such business as defined (in this section) are hereby classified as peddlers operating a rolling store, and shall be subject to the provisions of this ordinance relating to the operation of such store."

The occupation tax heretofore indicated, however, is

limited to those operating a "rolling store" as in this case; the others are charged simply a permit fee which varies in amount as it is applied to the things carried and the means of transporting same.

Section 3489, Comp. St: 1922, here involved, gives and grants unto metropolitan cities the following powers, among others: By ordinance to "levy any tax or special assessment authorized by law and to appropriate money and provide for the payment of the debts and expenses of the city. * * * To care for and control * * * streets, avenues, parks and squares within the city. * * * To regu-late the transportation of articles through the streets, and to prevent injuries to the streets from overloaded vehicles."

Section 3496 provides: "The council shall have power to tax for revenue, license and regulate * * * peddlers; * * * such tax may include both a tax for revenue and license. The city council shall have power to raise revenue by levying and collecting a tax on any occupation or business within the limits of the city and regulate the same by ordinance."

In State v. Omaha & C. B. Street R. Co., 100 Neb. 716, we held: "A city of the metropolitan class has control of its streets, and, while it cannot prohibit the general and ordinary use for which the streets are constructed, it is within the reasonable discretion of the authorities of such city to prescribe the uses to which a street may be put and to regulate the traffic thereon." In the instant case it cannot reasonably be said that operating rolling stores of this species would be other than an extraordinary use, a tolerated use, of the streets; a situation easily distinguishable from the one giving rise to the above quotation, and others of our holdings wherein the law is similarly expressed.

Is this ordinance vulnerable to the challenges interposed? It is not an unreasonable classification to place what is known as "rolling stores" in the category of "peddling," for in fact operators of such stores are peddlers,

however with broadened privileges. They travel from house to house, or from place to place, upon the streets, with their goods for immediate sale and delivery as does an ordinary peddler; in addition, they demand and receive a larger part of such streets as well as a longer and more obstructive use thereof; they create and maintain an enhanced danger to the traveling public, and besides the city incurs a greatly increased expense by way of police protection, and maintenance of the streets.

As to the extent of the fee and tax: Under the ordinance in question the privilege extends to all the streets and alleys in the city, is without restriction as to locality, time when used, size of vehicles, number of permits for which one person might apply, or the number of persons to whom permits would be granted if application was made therefor, except as restricted by such imposed fee and tax. With such a situation confronting the officers of the city, they might with propriety, under a regulatory ordinance, impose a tax which of itself would serve a restrictive purpose. As well said in 37 C. J. 192, 193:

"The rule that the license fee can cover only the expense of issuing the license and regulating the business does not apply to those occupations or privileges which, although tolerated, are hurtful to public morals, productive of disorder, or injurious to the public. In such case fees or taxes may be imposed in such sums as to have a restraining or repressive effect, or even to prohibit the occupation or privilege." Further, "As to occupations or privileges which are in their general effect injurious or offensive to the public welfare, fees or taxes that are practically prohibitive may be imposed."

The law as announced in the above quotations will be found sustained by the following cases: *Village of Minneota v. Martin*, 124 Minn. 498; *H. G. Hill Co. v. Whitice*, 149 Tenn. 168; *St. Louis Poster Advertising Co. v. St. Louis*, 249 U. S. 269; *Alaska Fish Salting & By-Products Co. v. Smith*, 255 U. S. 44.

Thus we conclude that, while the ordinance on its face

is restrictive, from it we are not warranted in finding that it is necessarily unreasonable or prohibitive. Neither is it open to the objection that the classification made therein is arbitrary. In this latter conclusion we are upheld by *Rosenbloom v. State*, 64 Neb. 342, wherein we approved the holding in *Seabolt v. Commissioners of Northumberland County*, 187 Pa. St. 318, as follows: "Classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition." Such an objectionable purpose is not disclosed by the record before us.

It yet remains to be determined whether or not, as a matter of fact under the evidence adduced, the tax imposed is unreasonable or prohibitive. In *Littlefield v. State*, 42 Neb. 223, we held: "Where such an ordinance is clearly within the general powers of a municipal body it is presumed to be reasonable, and the judicial power of the state will not be exercised to declare it void, unless from its inherent character, or by proofs adduced, it is shown to be unreasonable." Further, in *City of Grand Island v. Postal Telegraph Cable Co.*, 92 Neb. 253, we held: "The amount of an occupation tax is not to be measured by the profits of the business taxed, but should be considered as one incident to local self-government, and when thus considered it appears *prima facie* reasonable in amount, courts of justice should not declare the ordinance void, unless and until it is clearly shown by competent evidence that the license charge is in fact unreasonable or confiscatory."

Applying the rules thus announced to the evidence before us, and considering the case as one here for determination *de novo*, the finding of the trial court that "the license tax of $15 a day on plaintiff's rolling store is more than the reasonably to be expected profits per day of conducting said store and will naturally prevent the conducting of said business upon defendant city's streets," is not sustained. The test revealed by the evidence, to wit, oper-

ating one rolling store at a certain locality in this metropolitan city for a period of five or six days, is of too limited a nature to fairly test the question as to whether or not such ordinance is in fact unreasonable or prohibitive. Such test, to be forceful, should have challenged the entire scope of the ordinance, as well as its purpose.

Thus it will be seen that, while we agree with the conclusion of the learned trial judge to the effect that the petition is without equity, we do so without approving certain of his findings.

AFFIRMED.