CHARLES FOUGERON ET AL., APPELLANTS, V. COUNTY OF
SEWARD, NEBRASKA, ET AL., APPELLEES.

119 N. W. 2d 298

Filed February 1, 1963. No. 35352.

Ivan A. Blevens, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Russell A. Souchek, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The plaintiffs brought this suit against the State of Nebraska and the County of Seward to enjoin the closing of a county road at a point where it intersects Interstate Highway No. 80 in Seward County, and for damages. The trial court found for the defendants and dismissed plaintiffs' petition. Plaintiffs have appealed.

At the time the petition was filed in the district court the Department of Roads of the State of Nebraska was engaged in the construction of a new interstate highway across Seward County. At the section of the interstate highway giving rise to this litigation the interstate highway is being constructed in an east and west direction on the half section line through Sections 21, 22, 23, and 24, more specifically described in the petition. The plaintiffs complain of the barricading of the north and south county road at its intersection with the interstate highway between Sections 22 and 23. The county roads 1 mile east and 1 mile west of the closed road will cross the interstate highway right-of-way. U. S. Highway No. 6 lies along the south side of Sections 21, 22, 23, and 24, and is therefore one-half mile south of Interstate Highway No. 80.

Plaintiffs are the owners of 240 acres of land in the north half of Section 23 which is adjacent to the north side of Interstate Highway No. 80. It lies one-quarter mile east of the barricaded county road intersection herein involved. Plaintiffs also own 240 acres of land in Sections 26 and 27 immediately south of U. S. High-

way No. 6. The two tracts are separated by both highways No. 6 and No. 80, and the half mile that lies between them. It is the contention of plaintiffs that they have been seriously inconvenienced and damaged by the barricading of the county road in that they will be required to travel by a long and circuitous route in moving vehicles and farm machinery from one tract of land to the other. Plaintiffs contend that they were entitled to notice of the barricading of the county road, which was not given. They contend further that the barricading of the road was done pursuant to an unconstitutional law and, even if it be constitutional, that the defendants failed to comply with its provisions.

The plaintiffs state also that it was necessary for the State to take some of their lands along their south line by condemnation; that they understood the county road along the east side of Section 23 would be kept open across the interstate, but they were not informed about the barricading of the county road along the west side of Section 23; that any possible damage for barricading this county road was not taken into consideration by the appraisers in the condemnation proceeding; and that a want of notice prevented any such consideration. On the basis of these facts plaintiffs sought to enjoin the barricading of the county road.

Plaintiffs allege that section 39-1728, R. R. S. 1943, by virtue of which the county road was barricaded, is violative of Article III, section 18, of the Constitution of Nebraska, prohibiting the passage of special laws for vacating roads, and Article I, section 3, of the Constitution of Nebraska, providing that no person shall be deprived of property without due process of law. The questioned statute provides: "A county or township road may be barricaded by the road department of the state for the purpose of regulating, restricting, or prohibiting ingress and egress to a state highway upon which the department has established a limited or controlled access facility; Provided, that prior thereto the

written notice has been given by the department to the county or township board having jurisdiction of the road to be barricaded and that within thirty days from the date such notice was given, the county or township board, as the case may be, has not adopted by unanimous vote of all its members and delivered to the department a resolution opposing the barricading of such road; and provided further, that road crossings shall be provided along such controlled or limited access facilities at intervals of not to exceed five miles unless the consent of the county board has been obtained for the establishment of fewer crossings." § 39-1728, R. R. S. 1943.

The section was enacted as a part of an act recodifying the county road laws of this state. Laws 1957, c. 155, p. 508. In 1953 the Legislature gave the Department of Roads authority by condemnation or with the consent of the owner to deny access to and from the abutting lands. Laws 1953, c. 140, p. 460. In 1955 the Legislature rewrote the state highway laws and provided also for the construction of limited or controlled access facilities. Laws 1955, c. 148, p. 413. It is evident that as the need grew for the establishment of controlled or limited access roads, the Legislature extended the authority of the Department of Roads in order to provide for them. By sections 39-1722 to 39-1727, R. R. S. 1943, the method of relocating, vacating, or abandoning county roads generally is set out. By the controversial section 39-1728, R. R. S. 1943, the Legislature dealt with the method to be followed in dealing with a limited or controlled access road. Interstate Highway No. 80 is concededly such a road.

It is the contention of the plaintiffs that for the Legislature to provide a different method for the barricading of county roads in constructing a limited or controlled access facility than is provided for county roads generally is to act specially rather than generally within the purview of Article III, section 18, of the Constitution.

We do not concur in this view. Section 39-1728, R. R. S. 1943, applies to limited or controlled access facilities which provide problems altogether different than the ordinary road. It is within the legislative prerogative to place limited or controlled access facilities in a separate class for purposes of legislation. The law operates alike upon all within the class. The Legislature may make reasonable classifications of the objects of legislation for the purpose of legislating with reference thereto. The power of classification rests with the Legislature and it will not be interfered with by the courts if real and substantial differences exist which afford a rational basis for classification. The act is not special if it operates uniformly upon a classification reasonably made. Livingston Loan & Bldg. Assn. v. Drummond, 49 Neb. 200, 68 N. W. 375; McFadden v. Denter, 118 Neb. 38, 223 N. W. 462; Bauer v. State Game, Forestation & Parks Commission, 138 Neb. 436, 293 N. W. 282; Dorrance v. County of Douglas, 149 Neb. 685, 32 N. W. 2d 202; Omaha Parking Authority v. City of Omaha, 163 Neb. 97, 77 N. W. 2d 862.

Plaintiffs rely upon State ex rel. County of Dawson v. Dawson County Irr. Co., 125 Neb. 836, 252 N. W. 320, in support of their position. In that case the Legislature relieved irrigation companies of the burden of maintaining bridges over their canals, ditches, and laterals while drainage districts, mill race owners, and others constructing artificial waterways across roads and highways were not so relieved. The act did not operate uniformly upon the class of persons affected and it came within the prohibition against special legislation. The act before us operates uniformly upon a reasonable classification of highways and does not fall within the prohibition of Article III, section 18, of the Constitution.

It is further contended that section 39-1728, R. R. S. 1943, should be considered in pari materia with sections 39-1722 to 39-1727, R. R. S. 1943. This would

mean that the latter sections would have to be complied with in addition to the former in barricading a county road to deny access to a limited or controlled access facility. We think that sections 39-1722 to 39-1727, R. R. S. 1943, were intended to deal with the establishment, alteration, and vacation of public roads generally while section 39-1728, R. R. S. 1943, was intended to deal with the barricading of county roads as it related to limited or controlled access highways. Section 39-1728, R. R. S. 1943, deals with a specified class of highways and sections 39-1722 to 39-1727, R. R. S. 1943, are to apply to all other county roads. They are independent, one from the other. The intent of the Legislature is clear in this respect and it is the only logical interpretation that can be put upon the meaning of these statutes. Section 39-1728, R. R. S. 1943, was passed to facilitate the construction of limited or controlled access facilities and takes precedence over the general provisions of sections 39-1722 to 39-1727, R. R. S. 1943, as does a special provision over a general one.

The plaintiffs contend that they were not accorded due process of law in that notice of the barricading of the county road was not afforded them. The fundamental question presented is whether or not they had such an interest as to require the giving of notice. The present statute requires no notice. Admittedly the statute would be constitutionally defective if it did not meet the requirements of due process.

The Legislature has plenary powers over the public roads and highways of this state. They may be created by statute, either directly or through power delegated to proper subdivisions of the state. They may be altered or discontinued in the same manner in which they were created. Two methods are available to the Legislature in the accomplishment of this purpose; by the exercise of the police power, or by eminent domain. It is evident that the method employed in the statute before us to prevent entry from a county road to a lim-

ited or controlled access facility, in this instance an interstate highway, is by the exercise of its police power. Even though the exercise of the police power is reasonable, it must not amount to a taking of private property without due process of law. Warren v. Iowa State Highway Commission, 250 Iowa 473, 93 N. W. 2d 60.

If the barricading of the county road amounted to a taking of private property without notice, plaintiffs could properly resort to injunction even though they have an alternative remedy for damages for the taking or damaging of private property for public use under Article I, section 21, of the Constitution.

Was the closing of the county road, under the circumstances shown, a taking or damaging of plaintiffs' property that would entitle them to compensatory damages? The evidence shows that neither of plaintiffs' tracts of land abuts the intersection at which the county road is being barricaded. Plaintiffs' home place in Section 23 is more than one-quarter mile east of the county road barricade. It is obvious that the barricade will prevent the use of the county road as plaintiffs have used it in the past. It will be necessary for the plaintiffs to use a more lengthy and circuitous route to move vehicles, farm machinery, and livestock from one tract to the other. Their immediate access to the county road is not impeded, but they assert that the right of ingress and egress to their two tracts of land has been unlawfully interfered with and that they are entitled to have the barricading of the road enjoined until due process is afforded and steps taken to have the damages determined and paid.

This court has determined that a property owner suffers a compensable damage on account of the construction or vacation of a public road when egress and ingress to his property are cut off or interfered with and he has no other reasonable means of access. The right of access under such circumstances is property which cannot be taken from him without compensation. But

plaintiffs' access to the county road was in no way impeded. It was barricaded some distance from plaintiffs' property. They can still reach their lands by the public road system, although the distance will be greater and the route circuitous. The inconvenience sustained is the same as that sustained by the general public, although it may be greater in degree. One cannot enjoin the barricading of a public road where he suffers only such inconvenience or injury as is suffered by the public generally, even though his inconvenience may be greater in degree. It follows also that plaintiffs have no cause for action for damages where they have not been specially damaged. They have no claim for compensatory damages and, consequently, they were not entitled to notice in the absence of statutory requirement. Section 39-1728, R. R. S. 1943, is not invalid in failing to afford due process to the plaintiffs and is not subject to attack for unconstitutionality on that ground. Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622; Tomazewski v. Palmer Bee Co., 223 Mich. 565, 194 N. W. 571; Warren v. Iowa State Highway Commission, *supra;* Department of Highways v. Jackson (Ky.), 302 S. W. 2d 373.

Plaintiffs further contend that defendants did not comply with section 39-1728, R. R. S. 1943, in that they failed to give the notice to the county board required by that section. The facts are not in dispute. The State through its Department of Roads sent the required notice to the county board by certified mail. An employee in the county clerk's office receipted for the letter at the post office but for some reason it was never brought to the attention of the county board. It is clear that the notice was given in accordance with the statute and it came into the hands of an employee in due course of handling. The notice having come into the hands of a person entitled to accept it, the failure of the county board to give consideration to it is the fault of county board and its agents and employees, and not the

State. Even though the postal service was the agent of the State in delivering the notice, it made the delivery and the county board is bound thereby. Under the facts shown, the county board is charged with notice within the time provided by the statute.

The trial court evidently arrived at these same conclusions. Its judgment being in all respects correct, the judgment is affirmed.

AFFIRMED.