STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS, ATTORNEY
GENERAL, PLAINTIFF, V. JANICE L. GRADWOHL ET AL.,
DEFENDANTS.

235 N. W. 2d 854

Filed November 26, 1975. No. 40250.

Paul L. Douglas, Attorney General, and Steven C. Smith, for plaintiff.

Edward F. Carter, Jr., of Barney & Carter, for defendants.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an action for a declaratory judgment commenced in this court under the provisions of Article V, section 2, of the Constitution of Nebraska, giving this court original jurisdiction: ". . . in all cases relating to the revenue, civil cases in which the state is a party . . . ." It is commenced by the State of Nebraska on the relation of Paul L. Douglas, Attorney General. It involves the constitutionality of section 3 of L.B. 381, Eighty-fourth Session of the Nebraska Legislature, as that section exempts from assessment of court costs those convicted of exceeding the speed limit on the Interstate Highway by not more than 10 miles per hour. The defendants are judges of the municipal court of the city of Lincoln and the clerk of that court.

The petition, among other things, alleges: "4. That in actual cases which have arisen, the defendants have since May 23, 1975, are currently, and will continue in the future to proceed in accordance with Section 3 of Legislative Bill 381; specifically, that court costs have not been, are not now, nor will they be, imposed, charged or collected against violators convicted of exceeding the speed limit by not more than ten miles per hour on the National System of Interstate and Defense Highways.

"5. That the State of Nebraska seeks to enjoin the defendants from proceeding under the unconstitutional provision in the act for the reason that it has no other adequate remedy at law." The Attorney General acts in this case pursuant to a request of the Governor under

the provision of section 84-205(9), R. S. Supp., 1974.

The defendants admit the allegations of paragraph 4 of the petition and ask that the challenged section of the act be held constitutional.

L.B. 381, among other things, amends section 39-662(2), R. S. Supp., 1974, to provide for speed limits for highway travel as follows: "(c)  Fifty-five miles per hour upon any freeway." §§ 39-662(2) (c), 39-666(1) (c), (2) (c), (4) (c), R. S. Supp., 1975.  It also provides in section 3 that: "Any person convicted of exceeding by not more than ten miles per hour the speed limit on the National System of Interstate and Defense Highways shall be fined not more than ten dollars but no court costs shall be assessed against him."  Section 3 is codified as section 39-662.02, R. S. Supp., 1975.

The plaintiff argues first that section 3 is a special law creating an unreasonable classification contrary to the following provisions of Article III, section 18, Constitution of Nebraska: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: . . . Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever; . . . In all other cases where a general law can be made applicable, no special law shall be enacted."  Plaintiff cites and relies upon the following authorities: City of Scottsbluff v. Tiemann, 185 Neb. 256, 175 N. W. 2d 74; Omaha Parking Authority v. City of Omaha, 163 Neb. 97, 77 N. W. 2d 862; Fougeron v. County of Seward, 174 Neb. 753, 119 N. W. 2d 298; Tom & Jerry, Inc. v. Nebraska Liquor Control Commission, 183 Neb. 410, 160 N. W. 2d 232.

The plaintiff argues and we quote from its brief: "In effect, Section 39-662.02 creates two classes:  (1) Those convicted of exceeding by not more than ten miles per hour the speed limit on the Interstate Highway; and (2) all others convicted of speeding violations enumerated in Sections 39-662 and 39-666, 1975 Supp.

"A more general characterization of the classes is as

follows: The language of Section 39-662.02 relating to costs creates an immunity from court costs for a particular class of persons convicted of traffic violations. Other than those within the scope of the privileged class, all other persons convicted of any public offense must pay court costs."

It is apparent that the plaintiff's claim is that the statute creates an arbitrary class of persons, viz, those who exceed the speed limits on the Interstate Highway by not more than 10 miles per hour, and another class consisting of all others convicted of various speeding violations. The plaintiff quotes from City of Scottsbluff v. Tiemann, *supra,* as follows: " '. . . The classification must rest upon real differences in situation and circumstances surrounding members of the class relative to the subject of the legislation which renders appropriate its enactment. . . . some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified.' "

Plaintiff, we believe, misses the point of the authorities which it cites. It assumes that the statute creates a class of persons. It does not. This section of the statute applies to all persons, whomever they may be, who happen to violate the statute in the manner specified. The point of both Tiemann and Omaha Parking, each of which involved legislation pertaining to municipalities, was that the statutes attacked in those cases constituted special legislation because the legislation pertained only to certain cities. In Tiemann the legislation was held to be special and therefore invalid because the statute by its terms could apply only to certain cities (those of a certain population at a certain time and therefore a closed class). In Omaha Parking the legislation was held not special because the class of cities was not closed. Section 3 of L.B. 381 does not create a class of persons any more than do the other sections of the statute which set various speed limits

for residential districts, business districts, unsurfaced roads, or surfaced roads other than the Interstate Highway. Other sections set speed limits depending upon the type of vehicle or the type of road. These classifications, like the one which the plaintiff challenges, are classifications of subject matter rather than of persons.

The real question in this case is whether the constitutional provision against special legislation somehow requires that costs be assessed against all violators of speed laws irrespective of what the particular violation may be. This, as we have already noted, clearly involves a classification of subject matter only.

The applicable principles which must guide us are: "The Legislature may classify the subjects, persons, or objects as to which it legislates if such classification rests upon differences in situations or circumstances between things dealt with in one class and those dealt with in another.

"The power of classification rests with the Legislature and it will not be interfered with by the courts if real and substantial differences exist which afford a rational basis for classification." Fougeron v. County of Seward, *supra*. See, also, Erwin v. City of Omaha, 118 Neb. 331, 224 N. W. 692. These general rules as to the validity of such classifications apply to classifications made under the police power. 16A C. J. S., Constitutional Law, § 493, p. 254. For example, we have held that penalties for crimes which are essentially similar except for differences of person, place, and/or circumstances may vary provided the reasons for the differences pass constitutional muster. See, State v. Holland, 183 Neb. 485, 161 N. W. 2d 862; State v. Eckstein, 188 Neb. 146, 195 N. W. 2d 194.

Plaintiff argues that because costs assessed are reimbursement for the expenses of prosecution, they must be assessed against the person convicted (except in cases of indigency) in every type of case, otherwise Article III, section 18, of the Nebraska Constitution, is violated.

The plaintiff, however, cites no case which so holds and we have found none.

If it is constitutional for the Legislature to vary penalties according to its judgment of the seriousness of the offense, it may clearly mitigate the burden of costs as well. It may be true that technically costs assessed are not part of the punishment or penalty for an offense. The plaintiff cites cases from other jurisdictions which so hold. However, it does not then necessarily follow that exempting a certain type or class of offense from the imposition of costs constitutes an unconstitutional classification. As a practical matter, court costs are a part of the burden which the loser must bear. Costs are assessed only against those convicted. See, §§ 29-2206 and 29-2705, R. S. Supp., 1974, and 29-2709, R. S. Supp., 1975.

Under the general principles we have earlier cited, it is not for this court to question the legislative judgment that exceeding by no more than 10 miles per hour the 55 miles per hour speed limit on the interstate four-lane divided highway, designed for speeds of 75 miles per hour, is a less serious offense than other categories and therefore ought to be relieved of the burden of costs.

The plaintiff's contention that section 3 of L.B. 381 violates Article III, section 18, of the Nebraska Constitution, is not meritorious.

We turn now to the plaintiff's contention that section 3 of L.B. 381 is unconstitutional because it violates Article III, section 14, of the Nebraska Constitution, which provides in part: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." L.B. 381 is entitled as follows: "AN ACT to amend sections 39-662, 39-666, and 39-669.26, Revised Statutes Supplement, 1974, relating to rules of the road; to delete pro-

visions for termination of the fifty-five mile per hour speed limit; to provide a penalty; to change the assessment of points; to provide for expiration of speed limits; to provide severability; to repeal the original sections, and also section 39-662.01, Revised Statutes Supplement, 1974; and to declare an emergency."

The plaintiff asserts that the provisions of the act relating to exemption from costs amends the following sections of the Nebraska statutes relating to costs without repealing or amending those sections, viz, section 29-2207, R. R. S. 1943 (providing for assessment of cost against every person convicted of a felony or misdemeanor); section 33-124, R. R. S. 1943 (providing that in criminal cases the county judge collects fees of $6); section 26-112, R. S. Supp., 1974 (providing that the clerk of the municipal court collects costs of $6 in criminal matters); section 24-703(3), R. S. Supp., 1974 (providing for taxation of costs of $1 for the Nebraska Retirement Fund for Judges in each civil and criminal proceeding in the municipal, county, and district courts); and section 81-1429, R. S. Supp., 1974 (providing for taxation of costs of $1 for the Law Enforcement Improvement Fund in each criminal proceeding, including traffic violations). To the above list the plaintiff might have added section 29-2705, R. S. Supp., 1974. It may be that similar contentions can be made with reference to other sections relating to costs. Our research has not been exhaustive.

This court has had occasion to consider the applicability of Article III, section 14, of the Nebraska Constitution, on dozens of occasions from 1876 until the present day. To solve the present question we need refer to only two of those decisions for they contain the guidelines which enable us to decide this question properly.

In State v. Greenburg, 187 Neb. 149, 187 N. W. 2d 751, we said: "The constitutional provision that amendatory acts shall contain the section amended does not apply to an independent act which is complete in itself.

. . . The constitutional provision is applicable to an act which is not complete in itself, but relates to other existing statutes by changing them in part so that the changes and the existing provisions result in a connected piece of legislation covering the same subject matter." In Bodenstedt v. Rickers, 189 Neb. 407, 203 N. W. 2d 110, we held: "If an act is complete and independent in itself, it may incidentally amend, modify, or have impact upon the provisions of existing statutes without controverting the provisions of the Constitution relating to amendments set out in Article III, section 14."

In Greenburg the amendatory statute was held unconstitutional because the amendatory act was not complete in itself. It could not be understood or applied without reference to another act which it neither repealed, amended, incorporated, nor referred to.

In Bodenstedt the legislation was held not to have violated Article III, section 14. In that case the title of the act was: " 'An Act relating to schools; to prohibit the formation of new school districts except as prescribed; to provide for mergers and *prohibit them in certain cases;* to restrict contracting for instruction; and to declare an emergency.' (Emphasis supplied.)" We went on to say, quoting from prior opinions: " 'The modern rule is: "Where an act does not purport to be amendatory, but is enacted as original and independent legislation, and is complete in itself, it is not within the constitutional requirement as to amendments, though it may, by implication, modify or repeal prior acts or parts thereof." (Citing cases).

" 'As stated in 59 C. J. 871: *"If an act or statute is in itself complete* and *intelligible without reference to other legislation,* it is not within the prohibition of the constitutional provisions by reason of the fact that it amends other statutes by implication, and it is not necessary that such statutes should be reenacted and set out at length as modified." ' (Emphasis supplied.)" The legislation in question in Bodenstedt prohibited the

merger of Class I school districts *in certain circumstances.* Other statutes provided the procedure to be used in case of merger. We there said: "We agree that if the legislation attacked is meaningless standing alone, or that it makes changes in existing law by adding new provisions and mingling the new with the old on the same subject in such a manner as to confuse the interpretation and the application of the whole legislation, then such legislation is purely amendatory in nature and falls within the prohibition of Article III, section 14, of the Constitution."

What was said in Bodenstedt applies here. L.B. 381 does, in fact, amend and repeal the original of the various sections of the statutes pertaining to rules of the road (speed limits) which are mentioned specifically in its title and which are the only statutes directly affected by the amendment. It therefore meets the requirements of Article III, section 14, insofar as the act pertains to the subject matter of speed limits. L.B. 381, considered together with other sections of the statutes not amended, such as those providing for general penalties, is a complete and independent act. The act is, within the meaning of Article III, section 14, as previously interpreted by this court, "complete and intelligible without reference to other legislation." It has only an incidental impact upon the various statutes relating to costs. Reference to those statutes for purposes of determining the duty of courts and administrators with reference to the assessment and collection of costs was necessary even before the enactment of L.B. 381. That situation has in no way been changed. Section 3 of L.B. 381 simply makes an exception to the cost statutes in a particular case. This is essentially the same circumstance dealt with in Bodenstedt.

Plaintiff also contends that L.B. 381 violates the provision of Article III, section 14, for the reason that "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." It argues

in effect that court costs are a separate subject and since not specifically mentioned the Constitution is violated.

As already noted, the title indicates that the act relates "to rules of the road; . . . to provide a penalty; . . . ." The title of an act is not required to be a synopsis of the contents of the act. Hall v. Simpson, 184 Neb. 762, 171 N. W. 2d 805. As long ago as 1880 this court held that in an act, the title to which was, "An act to establish a criminal code," provision could be made for payment of the costs of prosecution without mentioning the matter of costs specifically in the title. Boggs v. Washington County, 10 Neb. 297, 4 N. W. 984. It would seem to follow that the matter of exemption from costs is sufficiently germane to the subject matter as not to require specific mention in the title.

The plaintiff's contention that section 3 of L.B. 381 violates Article III, section 14, of the Nebraska Constitution, is not meritorious. We therefore hold that section 3 of L.B. 381 violates none of the sections of the Constitution discussed.

JUDGMENT FOR DEFENDANTS.

BOSLAUGH, J., concurs in the result.

NEWTON, J., dissenting.

I respectfully dissent. In my judgment those portions of L.B. 381 providing separate and distinct penalties and assessments of costs for speeding violations on a freeway are discriminatory and violate the equal protection clause of the Fourteenth Amendment.

McCOWN, J., dissenting.

L.B. 381, Laws 1975, does not create any new offense nor does it materially change the nature of any existing offense. It is not complete in itself, nor is it original and independent legislation. Instead, it attempts to reduce the penalties for any speed limit violation which occurs on any part of "the National System of Interstate and Defense Highways" if the speed limit is violated by not more than 10 miles per hour. The bill

reduced penalties by limiting the fine to not more than $10, omitting court costs, and by providing that no points shall be assessed against the operator under the point system, but it also completely revamped the point system.

The designation of Interstate highway system is a new addition to statutory language involving speed limits, which is now introduced into a group of statutes which have used and still use the term "freeway" in imposing various speed limits, and define that word in section 39-602(29), R. S. Supp., 1975. That freeway definition has continuously applied to a divided arterial highway designed primarily for through traffic with full control of access and with grade separations, and the definition of freeway has not and does not contain any limitations or references to the Interstate system.

In attempting to change the point system to provide for the omission of penalty points for a speed limit violation on any part of the Interstate system, instead of simply omitting any points for a speeding violation of not more than 10 miles an hour on the Interstate, L.B. 381 completely revised the point system. Prior to L.B. 381, any speeding violation, no matter where or on what highway it occurred, was subject to the same point assessment. Not more than 5 miles per hour over the speed limit was 1 point; 5 to 10 miles over the speed limit was 2 points; and more than 10 miles per hour over the speed limit was 3 points. L.B. 381 continues that same identical point assessment for speeding on most highways but now makes new and different assessment for speeding violations on freeways, the state highway system, or any dustless surfaced highways. As to those highways, 1 point is assessed for speeding not more than 10 miles per hour over the speed limit; 2 points for 10 to 15 miles per hour over the limit; and 3 points for more than 15 miles per hour over the limit. L.B. 381 then provides that no points shall be assessed upon conviction of exceeding by not more than 10 miles

per hour the speed limit on any part of the Interstate system. Speed limits referred to and specifically included in L.B. 381 are all general statutory speed limits under sections 39-662 and 39-666, R. S. Supp., 1975, and 39-663, R. R. S. 1943. It should be noted that those speed limits include maximum speed limits established by the Department of Roads or local authorities for a particular place or part of any highway, and include maximum speed limits effective at different times of day or night.

Regardless of the intent of the Legislature in adopting L.B. 381, the result is constitutionally unsupportable. Although the issue of equal protection was not directly raised in this case, the requirements of reasonable classification were raised and must be met. The Legislature may make a reasonable classification of persons, corporations, and property for the purpose of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class relative to the subject of the legislation which render appropriate its enactment; and to be valid, the law must operate uniformly and alike upon every member of the class so designated. See Creigh v. Larsen, 171 Neb. 317, 106 N. W. 2d 187.

Although L.B. 381 attempted to reduce the penalties for certain violators of the speed laws, it nevertheless imposed new and different penalties upon others and it must therefore still comply with constitutional provisions requiring uniformity, the inhibitions as to the enactment of special laws, and must also be nondiscriminatory under the equal protection clause.

Thorough analysis of L.B. 381 establishes the fact that there are literally no real differences in situation and circumstances in many, if not most, of the circumstances upon which it purports to operate. There is no logical nor rational justification for any distinction between speeding on a freeway which is a part of the Interstate system and speeding on a freeway which is

not. Neither is there any possible justification for imposing different penalties for an identical violation of the same speed limit law simply because it occurred at one place rather than another. The arbitrary nature of the distinctions L.B. 381 attempts to make are perhaps best illustrated by an example involving a 45-mile per hour speed limit established at a particular place or part of different highways by the Department of Roads or local authorities under section 39-663, R. R. S. 1943. Such speed limits are established upon the basis of an engineering and traffic investigation to determine what is reasonable and safe for that particular location and highway. Obviously in each case the maximum speed limit has been set with respect to the conditions on that particular highway. Under L.B. 381, if that 45-mile per hour speed limit is violated by 7 miles per hour, the result would be as follows: On the Interstate system, a fine of not more than $10, no court costs, and no points; on a freeway other than the Interstate, a fine of not more than $100 plus costs, and 1 point; on any part of the state highway system or on any dustless surfaced highway, the result would be the same as on a freeway; on a county road, the penalty would be a fine of not more than $100 plus costs, and the assessment of 2 points. In the event the same 45-mile per hour speed limit were violated by more than 10 miles per hour but less than 15, all violators would be assessed under the same fine and cost limitations. The drivers on the Interstate, freeway, and state highway systems would be assessed 2 points, while the driver on the county road would be assessed 3 points. It is only when the violation of that 45-mile per hour speed limit exceeds the limit by more than 15 miles per hour that all drivers are again subject to the same penalties.

While the power of classification rests with the Legislature, such classification must rest upon real and substantial differences which afford a rational basis for the classification. Those real and substantial differences

do not exist here, nor is there a rational basis which can logically justify the classifications made. The purposes and provisions of L.B. 381 are so intertwined and interconnected that it is impossible to separate those portions which are constitutionally permissible and those which are not. Therefore, the entire act should fall.

CLINTON, J., responding to the dissents of Newton and McCown, JJ.

We accepted jurisdiction in this case under the constitutional provision giving us optional original jurisdiction in cases "relating to the revenue" and because the State is a party to the action. The State is a party and has an interest only because of the claim that the revenue is affected. The State attacks only the portion of the statute relating to revenue, i.e., costs, and it does so only on the basis of Article III, section 18, of the Constitution, relating to special laws and prohibiting "any special or exclusive privilege, immunity . . . whatever . . . ."

It does not challenge the statute on the basis of denial of equal protection. The plaintiff's standing is founded on the claim that the state revenue is affected and it neither presents nor argues equal protection issues. The parties defendant have no equal protection claims and are not affected by the issues discussed in the dissents. Specifically, the matters raised in the dissent of McCown, J., are not argued or discussed in the briefs of the parties. Those questions are not justiciable issues as no party, plaintiff or defendant, is affected by them.

While we have been liberal in determining the standing of the Attorney General to sue in the name of the State, we have never granted standing except where either the State or the defendants had a direct interest in and were affected by the issues raised. See, State ex rel. Sorensen v. State Board of Equalization & Assessment, 123 Neb. 259, 242 N. W. 609, 243 N. W. 264 (state revenue affected); State ex rel. Meyer v. Peters, 188 Neb. 817, 199 N. W. 2d 738 (state revenue affected);

State v. Pacific Express Co., 80 Neb. 823, 115 N. W. 619 (party defendant was directly affected by the issues and the Attorney General acted on behalf of the general public). These cases all are exceptions to the general rule that a litigant can question a statute's unconstitutionality only when it is being applied to his disadvantage. Greene v. State, 83 Neb. 84, 119 N. W. 6; State ex rel. Ridgell v. Hall, 99 Neb. 89, 155 N. W. 228; State v. Brown, 191 Neb. 61, 213 N. W. 2d 712.

An opinion rendered on a matter where there is no controversy between interested parties is a mere advisory opinion. If we were to permit the Attorney General to raise general equal protection issues in cases where no party to the litigation is directly affected we place ourselves in the position of rendering an advisory opinion. This we have no power to do and ought not do.