LEONARD M. TRABERT ET AL., APPELLEES, V. BURDETTE
BOYES, APPELLANT.

FILED SEPTEMBER 20, 1915.  No. 18204.

1. **Waters: Overflow: Damages: Special Benefits.** Where a portion of a farm has been overflowed by the construction of a dam under a right obtained from the state, special benefits may be set off against incidental damages shown to have accrued to the residue of the tract.

2. ——: ——: ——: ——. And, in such a case, a valuable ice privilege which accrues to the owner of the residue of the tract, as a result of the construction of such dam, constitutes a special benefit.

APPEAL from the district court for Seward county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*T. L. Norval* and *J. J. Thomas,* for appellant.

*B. F. Good* and *Ed. P. Smith, contra.*

FAWCETT, J.

Appellant, who will be designated herein as defendant, obtained from the state of Nebraska the right to construct and maintain a dam across the Blue river, in Seward county, on his own land, just below certain contiguous land of plaintiffs, and to appropriate the waters of said stream for power purposes. The construction of the dam caused the waters of the river to overflow the land of plaintiffs. On March 20, 1911, defendant filed in the county court of Seward county a petition for the appointment of appraisers to assess plaintiffs' damages. Proceedings were duly had and an appraisement made, from which plaintiffs prosecuted an appeal to the district court for Seward county, where a trial was had to a jury. A verdict was returned assessing plaintiff's damages at $2,052, upon which judgment was rendered, and defendant appeals.

Defendant assigns six separate grounds of error. The first three and the sixth will not be discussed, as we do

not think the matters therein complained of could in any manner have prejudiced the defendant. The record shows that prior to the construction of the dam the unobstructed flow of the stream was such that ice in merchantable quantities did not form on plaintiffs' land. The construction of the dam overflowed the land of plaintiffs to such an extent as to create a millpond covering a number of acres. As to the land entirely taken no complaint is made. The controversy is as to the measure of damages for the land not actually taken.

The fourth and fifth assignments are: "(4) Where a portion of a farm has been taken under eminent domain, special benefits may be set off against incidental damages shown to have accrued to the residue of the tract. (5) A valuable ice privilege accrued to appellees by the construction of the dam, which did not exist before the appropriation. The right to take ice is appurtenant to the ownership of the bed of the river, which remains in appellees; and such privilege constituted a special benefit, proper to be considered in determining depreciation of the land not taken."

That the law is as stated in these two assignments is too well settled to require citation of authorities. Upon the trial below defendant attempted to prove by the witness Ashton that the pond created by the dam was a special benefit to plaintiffs by reason of the fact that from year to year the ice which formed on the pond was of great value to plaintiffs. The witness, upon being specifically interrogated, testified that he had knowledge of the use and benefits which plaintiffs would derive by reason of the construction of the dam. He was not cross-examined as to the extent of his knowledge. His competency to testify was therefore sufficiently established. Defendant then offered to prove by the witness the value of the ice privilege. This offer was repeated in a number of different forms. The offers were objected to, on the ground that no sufficient foundation had been laid; that proof of special benefits is incompetent in a condemnation proceeding and not a proper measure of damages, the true measure of dam-

ages being the difference between the fair market value of the property immediately before and immediately after the condemnation proceedings; that the offer related to a situation that might arise subsequent to the construction of the dam and long after the right to condemn had been obtained; that plaintiffs are not engaged in the ice business, are unfamiliar with it, and are not obliged to have such benefits thrust upon them; and that the testimony offered is incompetent, irrelevant and immaterial. These objections were all sustained. By the construction of the dam and the overflow of a portion of plaintiffs' land, defendant, if the testimony sought to be introduced by the witness be true, had created an appurtenance to plaintiffs' land which was worth $500 a year. This appurtenance to the adjoining land was created by the same act of defendant which took the other portion of the land. It was a special benefit to plaintiffs which defendant had a right to offset against any damage he had caused to that portion of plaintiffs' land not taken. Plaintiffs would not be required to engage in the ice business in order to obtain these special benefits. They were the owners of any ice privilege caused by the construction of the dam, and if that privilege had a market value, as a privilege, which could be sold or leased to others, or if plaintiffs themselves used the privilege thus created, in either case the value of the privilege would be a proper offset against the damages to the adjoining land. In so far as defendant was denied the right to offer proof upon this point, the court erred.

Plaintiffs further attempt to justify the action of the court by assailing the probable fairness of Mr. Ashton as a witness, on the ground that he is an interested party, and for other reasons urged. These matters would not justify the exclusion of the testimony of the witness. His fairness and credibility were for the determination of the jury. If he was a man of the character indicated, counsel for plaintiffs could doubtless have shown it on cross-examina-

tion, or, failing in that, have impeached the witness by other testimony.

It is next contended that the issue of special benefits was submitted to the jury; that there was, in fact, "some evidence" admitted by the court on that issue. The evidence referred to is the testimony of plaintiff Leonard Trabert. We think the fact that Mr. Trabert was permitted to testify upon this point is an aggravation rather than a mitigation of the error. Defendant could not be bound by this testimony of plaintiff when he attempted in a proper manner to refute it by other testimony.

In support of the fourth assignment defendant cites *Fremont, E. & M. V. R. Co. v. Whalen*, 11 Neb. 585, the second paragraph of the syllabus of which holds: "Special benefits may go to reduce the damages to what remains of the land, but cannot be set off against the value of the part taken." This is still the rule in this court. In support of assignment No. 5, defendant cites *Eidemiller Ice Co. v. Guthrie*, 42 Neb. 238, and numerous authorities from other states, all of which sustain the rule for which he contends.

For the reasons above given, the judgment of the district court is reversed and the cause remanded for further proceedings in harmony herewith.

REVERSED.

HAMER, J., not sitting.