HELEN CRAWFORD ET AL., APPELLANTS, V. CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, A CORPORATION, APPELLEE.

49 N. W. 2d 682

Filed November 9, 1951. No. 33013.

*Dryden, Jensen & Dier,* for appellants.

*Ralph O. Canaday, Aten & Chadderdon, Anderson, Storms & Anderson,* and *S. G. Lowe,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a condemnation action originally instituted by The Central Nebraska Public Power and Irrigation District, a public corporation, in the county court of Phelps County, Nebraska. The purpose of the action was to acquire a right-of-way across the northeast quarter of Section 14, Township 8 North, Range 19 West of the 6th P. M., in Phelps County on which to construct a drainage ditch. The district court for Phelps County, appeal thereto having been taken from the appraiser's award, awarded the owners of the land a total of $722.50, being $222.50 for 4.45 acres of land actually taken and $500 as damages to the balance of the land. From this award, their motion for new trial having been overruled, the landowners have appealed.

The principal contention made by appellants is that the amount awarded is clearly inadequate.

The principle here applicable is stated in McGinley v. Platte Valley Public Power and Irrigation Dist., 133 Neb. 420, 275 N. W. 593, as follows: "* * * the measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking."

And in Prudential Ins. Co. v. Central Neb. Public Power and Irrigation Dist., 139 Neb. 114, 296 N. W. 752, 145 A. L. R. 1, as follows: " 'This court has held that there are two elements of damage involved in a case of

this character: First, the market value of the land actually appropriated; and second, damages suffered by diminution in value of the remainder of the land, less special benefits received.' Stull v. Department of Roads and Irrigation, 129 Neb. 822, 263 N. W. 148." See, also, Rasmussen v. Central Nebraska Public Power and Irrigation Dist., 139 Neb. 456, 297 N. W. 897; Snyder v. Platte Valley Public Power and Irrigation Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154; Schulz v. Central Neb. Public Power and Irrigation Dist., 138 Neb. 529, 293 N. W. 409.

This being a law action in which a jury was waived the judgment of the trial court has the same force and effect as a jury's verdict and will not be set aside unless clearly wrong.

Appellants are the owners of the east half of Section 14, and lots 6, 7, 8, and 9 in Section 11, Township 8 North, Range 19 West of the 6th P. M., in Phelps County, and lots 3, 4, and 5 in Section 11, Township 8 North, Range 19 West of the 6th P. M., in Dawson County, all in Nebraska. These tracts are all farmed as one unit. The land taken, on which a drainage ditch has been dug, runs in a southwesterly to northeasterly direction from west to east across the northeast quarter of Section 14. The nature of the land through which it runs is pasture.

The record discloses competent evidence of well-qualified witnesses on which to base the court's finding that the reasonable market value of the 4.45 acres actually taken was $50 an acre. It also contains competent evidence of well-qualified witnesses on which to base the court's finding that the remainder of the land has, by reason of the taking, suffered damages by diminution in value to the extent of $500. In this respect it should be stated that during the course of the trial the judge viewed the premises. In view of the foregoing it cannot be said that the judgment of the trial court is clearly wrong.

Appellants complain of the trial court's finding that the land was specially benefited by the constant flow of fresh water in the ditch and the offset of the value thereof against the damage to the remainder of the land. There is competent evidence given by many well-qualified witnesses to support this finding.

"Special benefits may go to reduce the damages to what remains of the land, but cannot be set off against the value of the part taken." Fremont, E. & M. V. R. R. Co. v. Whalen, 11 Neb. 585, 10 N. W. 491. See, also, Trabert v. Boyes, 98 Neb. 671, 154 N. W. 231.

In Prudential Ins. Co. v. Central Neb. Public Power and Irrigation Dist., *supra*, we cited with approval the following from 2 Nichols, Eminent Domain (2d ed.), § 249, p. 765: "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. * * * In other words the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways."

As stated in 18 Am. Jur., Eminent Domain, § 298, p. 943: "In cases arising under the exercise of the right of eminent domain, benefits are usually divided into but two classes, general and special, the general benefits as a rule being those derived by the community from the use of the improvement, and special benefits being those derived by particular pieces of property because of their advantageous relation to the improvement, and differing in kind rather than merely in degree from the general benefits. * * * Special benefits include both neighborhood benefits and peculiar benefits; a benefit

does not cease to be special because it is participated in by every lot fronting upon the improvement."

" 'Few general rules can be laid down for ascertaining whether or not a given benefit is general or special; the question must be determined largely by the circumstances of the particular case.' 20 C. J. 822." Prudential Ins. Co. v. Central Neb. Public Power and Irrigation Dist., *supra*.

Whatever benefits appellants' land received from this stream of fresh water, which was created by the construction of appellee's drainage ditch, were special in character and could properly be used to reduce the damages to the remainder of the land. See, Trabert v. Boyes, *supra;* Stocker v. Nemaha Valley Drainage Dist., 99 Neb. 38, 154 N. W. 862.

Appellants further contend the trial court erred in the trial of the issues in considering the failure to fence the right-of-way as an element of damage unless the cost of fencing was allowed as damages. The judgment shows the court gave consideration to the fencing of the right-of-way taken. There is evidence in the record that in order to make the pasture safe for livestock it would be necessary to fence off the right-of-way. There is also evidence in the record that no fence is necessary. There is also evidence of the cost thereof in case it should be determined that it is necessary to do so.

As stated in 18 Am. Jur., Eminent Domain, § 282, p. 922: "Everything which affects the market value is to be taken into consideration. The creation of noise and dust, the invasion of privacy, the deprivation of light and means of access, the burden of additional fencing, and like matters, are to be included, not by being added together item by item, but to the extent that, taken as a whole, they detract from the market value of the property."

"Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably

will be used in the future, and the burden of construcing such additional fence is cast upon the owner of the land; then the burden of constructing and maintaining such fence in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages. * * * It is a question of damage to the land, as land. If, in view of the probable future use of the land, additional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it. Evidence of the cost of suitable fencing is competent as affording a means of arriving at the extent of the burden." 2 Lewis, Eminent Domain (3d ed.), § 741, p. 1316.

We find no merit to this contention as the matter was properly considered by the trial court.

The judgment of the trial court shows that in rendering the decision which it made it gave consideration to the matter of a bridge constructed across the ditch. There is no evidence that a bridge had been constructed. There was evidence introduced at the trial as to the necessity for a bridge and the probable cost thereof. Appellants raise the question of whether or not their rights, if any, under section 46-255, R. S. 1943, are proper issues in a condemnation proceeding and adjudicated by the award therein made.

Section 46-255, R. S. 1943, insofar as here material provides: "Any person, constructing a ditch or canal through the lands of another, having no interest in such ditch or canal, shall build such ditch or canal in a substantial manner so as to prevent damage to such land. In all cases where necessary for the free and convenient use of lands on both sides of the ditch or canal by the owner or owners of such lands, the owner or

those in control of such ditch shall erect substantial and convenient bridges across such canal or ditch, * * *."

In determining the damages arising to cause a diminution in the value of the balance of the land by reason of the taking of the right-of-way and the digging of the drainage ditch thereon, the appellants were entitled to have considered the severance, the inconveniences in operation of their farm arising therefrom, and what is necessary for relief from that condition. On the other side the appellee was entitled to show what it had done to relieve that condition, such as, in this case, putting in the 48-inch culvert and a fill 25 to 30 feet wide. See Stocker v. Nemaha Valley Drainage District, *supra.*

If section 46-255, R. S. 1943, is applicable, a question which we do not here decide, then mandamus is a proper remedy. See State ex rel. Johnson v. Central Neb. Public Power and Irrigation Dist., 140 Neb. 471, 300 N. W. 379. The question of whether or not, within the provisions thereof, the construction of the ditch made necessary the construction of a bridge for the free and convenient use of the lands on both sides thereof is an issue to be determined when an action is brought for that purpose. Whether or not the matters determined in this action are an adjudication of any rights appellants may have under the provisons of said section are not properly before us until an action is brought to enforce such rights and a plea to that effect is made thereto.

In view of the foregoing, we affirm the judgment of the trial court.

AFFIRMED.