JOSEPH BALOG ET AL., APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

131 N. W. 2d 402

Filed November 20, 1964. No. 35738.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., James J. Duggan, and James M. Winter, for appellant.

Davis, Thone, Bailey & Polsky, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and DIERKS, District Judge.

BOSLAUGH, J.

This is a proceeding in eminent domain. The plaintiffs, Joseph Balog and Josephine Balog, are lessees of a tract of land which is located adjacent to and north of the Cornhusker Highway north of Lincoln, Nebraska. In March and April of 1962, the plaintiffs constructed a building upon the leased land in which they operate a restaurant and tavern business.

On July 31, 1962, the State of Nebraska, the defendant in this proceeding, condemned a strip of land 12 feet in width across the south end of the leased property, together with the right of access to the Cornhusker Highway except by means of a one-way service road or frontage road which has been constructed between the south line of the leased property and the north line of the Cornhusker Highway.

The plaintiffs refused to accept the award of the appraisers appointed by the county court and appealed to the district court. The jury returned a verdict which in form found for the plaintiffs but assessed the amount of their recovery at "$ None." The plaintiffs filed a motion for new trial which was sustained. The defendant has appealed from the order which set aside the verdict and granted the plaintiffs a new trial. The assignments of error all relate to the order sustaining the motion for new trial.

The trial court gave no reason for its order granting the plaintiffs a new trial. The defendant contends that there is no prejudicial error shown in the record which would justify the granting of a new trial. It then becomes the duty of the plaintiffs to point out the prejudical error which they contend justifies the granting of the new trial. Connor v. State, 175 Neb. 140, 120 N. W. 2d 916.

The plaintiffs contend that the trial court erred in instructing the jury in reference to the measure of damages and in excluding the testimony of other lessees as to the effect of the improvement upon their property.

By instruction No. 6 the trial court instructed the jury that where a leasehold is taken or injured, the lessee is entitled to recover the value of the leasehold or the difference between the rental value of the remainder of the term and the rent reserved in the lease; that where a leasehold is taken or damaged, the lessee is entitled to recover the difference in the value of the leasehold immediately before and immediately after the taking; and that where the rent reserved equals or exceeds the rental value of the premises, the lessee suffers no loss and cannot recover.

In instruction No. 7 the jury was instructed that the measure of the damages sustained by the plaintiffs was the difference between the market value of their leasehold interest immediately before and immediately after the taking from which the injury resulted.

Instruction No. 8 was as follows:

"The measure of damages where a portion of a leasehold interest is taken, is the difference between the 'bonus' in the lease before and after the taking.

"This means that you will have to first (1) determine what is the fair rental value of the lease as of July 31, 1962, as enhanced by the improvement made by the lessee, for the remaining term of the lease as shown by the evidence. (2) You will then deduct from such amount the rent required to be paid by the lessee. (3) The difference, if any you find, constitutes what is referred to as the 'bonus' in the lease. If you find no difference between the fair rental value of the lease and the rent required to be paid by the lessee, there is no 'bonus' and therefore you cannot find any damages. On the other hand, if you find a 'bonus' in the lease as explained above you must then determine whether such 'bonus' has been depreciated in value by reason of the taking

herein for highway purposes. The amount of this depreciation in value, if any you so find from the evidence, shall constitute the damages sustained by the lessee. The measure of such depreciation, if any, is the difference between the bonus, if any, before and after the taking of the tract of land as of July 31, 1962."

The value of a leasehold is the difference between the rental value of the remainder of the term and the rent reserved in the lease. Ballantyne Co. v. City of Omaha, 173 Neb. 229, 113 N. W. 2d 486. If the rent reserved equals or exceeds the rental value, the lessee suffers no loss and cannot recover. Where the entire leasehold is taken, the measure of damages is the value of the leasehold. Where a part of a leasehold is taken or a leasehold is damaged, as in this case, the measure of damages is the difference between the value of the leasehold immediately before and immediately after the taking.

The instructions which were given in this case were confusing and misleading. One part of instruction No. 6 advised the jury that the plaintiffs were entitled to recover the value of the leasehold. Another part of instruction No. 6 advised the jury that the plaintiffs were entitled to recover the difference in the value of the leasehold immediately before and immediately after the taking. Instruction No. 8 defined value of the leasehold as a "bonus" and advised the jury that the plaintiffs could not recovery unless there was a "bonus" in the lease. The word "bonus" was an unfortunate choice of terms since it sometimes carries the connotation of being something in addition to what is ordinarily received by or strictly due to the recipient. See 5 Words and Phrases, Bonus (Perm. Ed.), p. 671.

The instructions which were given were misleading and conflicting. Conflicting instructions are erroneous and prejudicial unless it is apparent from the record that the jury was not misled thereby. Darnell v. Panhandle Coop. Assn., 175 Neb. 40, 120 N. W. 2d 278.

The damages in this case, if any, are to be determined by finding the value of the leasehold before the taking, the value of the leasehold after the taking, and the difference in the value of the leasehold before and after the taking. The instructions to the jury should state this method of ascertaining the damages in clear and concise language.

It is the duty of the trial court to instruct the jury as to the proper basis upon which damages are to be assessed. Enterprise Co., Inc. v. Sanitary Dist. No. One, 176 Neb. 271, 125 N. W. 2d 712. The failure of the trial court to instruct the jury properly as to the applicable measure of damages was prejudicial error and justified the granting of a new trial.

The plaintiffs offered the testimony of a garage operator and a service station operator to show that the construction of the improvement in question has had an adverse effect upon their businesses. The trial court refused to permit either witness to testify concerning his dollar volume of business before and after the construction of the improvement. The testimony offered was properly excluded.

The reception of evidence collateral to the main issue is within the sound legal discretion of the trial court. Peterson v. Andrews, 88 Neb. 136, 129 N. W. 191. Although the volume of the businesses operated by these witnesses may have declined, the decline in volume may have been due to causes other than the construction of the improvement. This type of evidence tends to be remote and ordinarily should not be received.

The defendant contends that the plaintiffs are not entitled to a new trial because they have no right to recover any damages resulting from their loss of direct access to the Cornhusker Highway. The witnesses for the plaintiffs testified that the damages to the plaintiffs' leasehold resulted from the change in the means of access. However, the defendant produced evidence that plaintiffs were damaged by the taking of the 12-

foot strip of land across the south end of the leased property. There was evidence that the plaintiffs had been damaged in the amount of between $300 and $400 because of restoration costs which included the cost of moving a sign and some gas lamps and spreading crushed rock upon the surface of the ground. The plaintiffs were entitled to the benefit of this evidence and to recover these damages without regard to whether they could recover damages because of the loss of direct access to Cornhusker Highway. Since the case must be retried, the issue raised by the defendant should be determined.

The patronage of the plaintiffs' restaurant and tavern business consists entirely of drive-in business. Before the improvement of Cornhusker Highway the plaintiffs had two driveways which provided direct access to their property from Cornhusker Highway. Since the construction of the improvement, the access to the plaintiffs' property is from a service road or frontage road that is parallel to and north of the Cornhusker Highway. A curb and guard rail separate the frontage road from the Cornhusker Highway. Traffic upon the frontage road is one-way moving from east to west. The entrance to the frontage road from Cornhusker Highway is located approximately 310 feet east of the plaintiffs' property. The entrance to Cornhusker Highway from the frontage road is approximately 358 feet west of the plaintiffs' property. The evidence in this case would sustain an award of damages for the depreciation in the value of their leasehold if the plaintiffs have a right to recover for the loss of direct access to the Cornhusker Highway.

The defendant argues that the plaintiffs cannot recover damages because their right of access to Cornhusker Highway was taken by an exercise of the police power. The fact that the improvement of a highway is an exercise of the police power does not determine whether the landowner or lessee is entitled to recover damages. This

distinction was recognized in Phillips Petroleum Co. v. City of Omaha, 171 Neb. 457, 106 N. W. 2d 727, 85 A. L. R. 2d 570, where this court said: "Appellant substantially argues that the court in giving instructions Nos. 4, 5, and 7 failed to recognize the right of a municipality to exercise the police power delegated to it in reference to its streets. § 14-301, R. R. S. 1943. The essence of the contention in this respect is that damages resulting from the exercise of the police power by appellant are not compensable. The fact that appellant had under the police power the right to improve its streets and thereby control the traffic thereon does not mean that it had immunity from liability to respond in damages which resulted to private property abutting the improvement where a part of the property of appellee was taken by condemnation. The exercise of police power may or may not involve the taking of private property and it may or may not involve mere noncompensable inconvenience to the owner thereof. The distinction is not whether it is a valid exercise of police power but whether or not the property itself is taken or damaged. In 18 Am. Jur., Eminent Domain, § 11, p. 639, the author says: 'The real distinction, however (between eminent domain and the police power), lies in the fact that in eminent domain property or a right in property is taken from the owner and transferred to a public agency to be enjoyed by it as its own, whereas under the police power, although it may, and often does, take property in the constitutional sense so that it must be paid for, this is not accomplished by a transfer of ownership, but by destroying the property or impairing its value.'

"This is a condemnation proceeding originated by a petition of appellant which characterizes it as such. The petition asked the appointment of appraisers to determine the compensation appellant was required to pay in the manner and to the extent required by law, and of course there was not and could not have properly

been any claim in the petition that the appellant was exempt from obligation to pay damages by reason that the municipality was exercising the police power. *Thereby appellant subjected itself to liability for all damages sustained by the taking which this court has repeatedly held includes all elements and inconveniences which affect the market value such as* ' "*The creation of noise and dust, the invasion of privacy, the deprivation of light and means of* access, * * * and like matters * * *." ' Crawford v. Central Nebraska Public Power & Irr. Dist., 154 Neb. 832, 49 N. W. 2d 682.

"In State ex rel. Westminster Presbyterian Church v. Edgecomb, 108 Neb. 859, 189 N. W. 617, 27 A. L. R. 437, this court quoted with approval from Chicago, B. & Q. Ry. Co. v. State of Illinois ex rel. Drainage Commissioners, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, the following: ' "Private property cannot be taken without compensation for public use under a police regulation relating strictly to the public health, the public morals or the public safety, any more than under a police regulation having no relation to such matters, but only to the general welfare. The foundations upon which the power rests are in every case the same." ' " (Emphasis supplied.)

The right of an owner of property abutting on a street or highway to ingress and egress to and from his premises by way of the street is a property right in the nature of an easement in the street which he cannot be deprived of without due process of law and compensation for his loss. Hillerege v. City of Scottsbluff, 164 Neb. 560, 83 N. W. 2d 76. The measure of the right of the owner of property abutting on a street to access to and from it by way of the street is reasonable ingress and egress under all the circumstances.

The following statement from Genazzi v. County of Marin, 88 Cal. App. 545, 263 P. 825, was quoted with approval in the Hillerege case: "Generally speaking, an abutting land owner on a public highway has a special

right of easement and user in the public road for access purposes, and this is a property right of easement which cannot be damaged or taken from him without due compensation. But an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, although entire access cannot be cut off. If he has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint."

The defendant further argues that an abutting landowner or lessee is not entitled to damages for loss of direct access to a highway if access is provided to a frontage road. The defendant relies upon section 39-1328, R. R. S. 1943, which authorizes the construction of frontage roads and further provides: "Upon the construction of any frontage road, any right of access between the controlled access facility and property abutting or adjacent to such frontage road shall terminate and ingress and egress shall be provided to the frontage road at such places as will afford reasonable and safe connections."

The statute cited, section 39-1328, R. R. S. 1943, is silent as to right of a landowner or lessee to recover damages for loss of direct access and is not determinative of the question presented. The right of a landowner or lessee to just compensation for property taken or damaged for public use is guaranteed by the Constitution. Art. I, § 21, Constitution of Nebraska. The right of access is a property right and the Legislature could not provide for its taking or damage without the payment of just compensation.

We believe that the correct rule, and the rule which prevails in this jurisdiction, was stated in State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P. 2d 988, where the court said: "An examination of many authorities from various jurisdictions convinces us that the weight of authority in the United States is to the effect that

either the destruction or the material impairment of the access easement of an abutting property owner to such highway is compensable. We therefore overrule the principle laid down in In re Forsstrom and Grande v. Casson, supra, which declared the non-compensability of an abutting property owner for the destruction or substantial impairment of his right of access to such highway. We also reject the reasoning upon which the rule rests i.e., that there is a presumption of payment. The rule to the contrary, supported by the weight of authority, is based upon the fact that an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right. Our State Constitution, Art. 2 § 17, A. R. S., prohibits the taking or damaging of private property for public use without just compensation. It follows that the State can neither take nor damage said easement of ingress or egress of an abutting property owner without just compensation.

"The case of State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N. E. 2d 53, states that an owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property which latter right may not be taken away or destroyed or substantially impaired without compensation therefor. This rule was reaffirmed in Starr v. Linzell, Ohio Com. Pl., 129 N. E. 2d 659, and has been enunciated in at least the following cases: Coyne v. City of Memphis, 118 Tenn. 651, 102 S. W. 355; Knox County v. Lemarr, 20 Tenn. App. 258, 97 S. W. 2d 659; Sharber v. City of Nashville, 27 Tenn. App. 625, 183 S. W. 2d 777; Blount County v. McPherson, 268 Ala. 133, 105 So. 2d 117; Siemers v. St. Louis Electric Terminal R. Co., 348 Mo. 682, 155 S. W. 2d 130; City of Cannelton v. Lewis, 123 Ind. App. 473, 105 N. E. 2d 911, 111 N. E. 2d 899; Lane v. San Diego Electric R. Co.,

208 Cal. 29, 280 P. 109; Strehlow v. Mothorn, 100 Cal. App. 692, 280 P. 1021; Department of Public Works and Buildings v. Wolf, 414 Ill. 386, 111 N. E. 2d 322; State v. Calkins, 50 Wash. 2d 716, 314 P. 2d 449; State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P. 2d 783; 43 A. L. R. 2d Annotation 1072; McMoran v. State, Wash., 345 P. 2d 598. * * * When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. Knox County v. Lemarr, 20 Tenn. App. 258, 97 S. W. 2d 659. Other means of access may mitigate damages, State v. Ward, 41 Wash. 2d 794, 252 P. 2d 279, but does not constitute a defense to the action however. Golden v. Louisville & N. R. Co., 228 Ky. 134, 14 S. W. 2d 379." See, also, People v. Ricciardi, 23 Cal. 2d 390, 144 P. 2d 799; Blount County v. McPherson, 268 Ala. 133, 105 So. 2d 117; Clayton County v. Billups Eastern Petroleum Co., 104 Ga. App. 778, 123 S. E. 2d 187; Hamilton v. Mississippi State Highway Commission. 240 Miss. 895, 128 So. 2d 742; McMoran v. State, 55 Wash. 2d 37, 345 P. 2d 598; Hendrickson v. State (Minn.), 127 N. W. 2d 165.

The plaintiffs may recover damages for loss of direct access to Cornhusker Highway if their right of access has been destroyed or substantially impaired. Whether the right of access has been destroyed or substantially impaired is a question of fact which must be determined upon the particular facts in each case. Hendrickson v. State, *supra.*

The evidence in this case would support a finding of substantial impairment of the right of access. The construction of the frontage road is a circumstance which

tends to mitigate the damages and must be considered but it does not, as a matter of law, deprive the plaintiffs of their right to damages, if any.

The order of the district court sustaining the plaintiffs' motion for a new trial is affirmed.

AFFIRMED.