INTERNATIONAL MOVING & STORAGE, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

410 N.W.2d 483

Filed August 14, 1987.    No. 85-668.

A. James McArthur, for appellant.

William G. Blake of Pierson, Ackerman, Fitchett, Akin & Hunzeker, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This is a proceeding in eminent domain brought by the City of Lincoln (City) to acquire certain property owned by the appellant, International Moving & Storage, Inc. (International), for a bridge overpass and street widening project on North 27th Street in the City. The date of the taking was January 20, 1984. A board of appraisers was appointed as provided by law and awarded International damages in the amount of $70,660. International, dissatisfied with the award, appealed to the district court for Lancaster County, Nebraska. Following trial, the jury awarded International damages in the amount of $75,000. International, believing that error had been committed, appealed to this court. We believe that there is no reversible error, and affirm.

While there is a significant and material dispute between the parties as to the amount of damages caused by the taking, there is relatively little dispute with regard to the facts relating to the issues on appeal.

International's property is located on the east side of 27th Street in the City, several hundred feet north of the Burlington Northern railroad tracks and south of Cornhusker Highway, a main east-west highway running near the northern boundary of the City. The specific property owned by International fronts on 27th Street, a north-south arterial in the City. The property in question occupies 200 feet of frontage on 27th Street and, at the time of the taking, was occupied by two buildings constructed parallel to each other, one along the north line of the property and the other along the south side. The buildings were originally constructed by International for the storage of household furnishings, as part of International's moving and storage business, with the first building having been constructed in 1961.

International no longer operates a storage business in the property and has, for some time, rented portions of the

buildings to various tenants, including a motorcycle repair and customizing shop, a carpet cleaner, the University of Nebraska, a gunsmith, a wrecker service, and a body shop and auto repair business.

The taking consisted of a strip of land 32 feet wide along the west side of International's property, together with a temporary easement for use of an additional 10-foot strip for construction purposes. The taking was necessitated by a project to construct a bridge over the Burlington Northern tracks and to widen and improve 27th Street in the vicinity of Cornhusker Highway. As a result of the project, vehicular access off of 27th Street to and from International's property was eliminated.

The evidence discloses that after completion of the project, the elevation of 27th Street will be approximately 11 feet above International's property at the south end and approximately 2.6 feet above the property at the north end. The side of the overpass facing International's property will be solid concrete. A new access to International's property is provided by means of a new street constructed along the east side of the property, thus forcing the back of the property to become the front. The new street is known as the fairgrounds loop and serves as a service road to properties adjacent to the railroad overpass, including International's. It likewise provides an improved access road to the State Fairgrounds, located near the property in question.

International has assigned four specific errors involving two particular matters. Assignments Nos. 1, 2, and 4 relate to testimony sought to be introduced by International with regard to specific traffic counts on 27th Street at or before the time of the taking. Assignment of error No. 3 relates to the giving of instruction No. 7 by the court.

Prior to trial the City filed a motion in limine to prohibit International from introducing any evidence concerning specific traffic counts on 27th Street. Further, during the course of the trial, the district court sustained an objection made by the City with regard to the admission of exhibit 6, a specific traffic count introduced by International, and further sustained objections to offers of proof made by International after the specific objection with regard to exhibit 6 was sustained.

The record does reflect, however, that while the court did not permit evidence of specific traffic counts to be presented to the jury, the court did permit evidence to be presented that 27th Street was a major thoroughfare. Further, the jury was permitted to hear testimony, offered both directly by International and by cross-examining the City's witnesses, regarding the effect that the removal of direct access to 27th Street would have on the property. The jury was further informed that the zoning on the land involved a high-traffic area where visibility and vehicular access were important and that the loss of direct access to 27th Street would make the property less attractive for the higher value commercial uses. The jury was informed by all of the witnesses who testified regarding values that the change of access would decrease the value of the property, and some testified regarding the effect on value by reason of the loss of visibility due to the elevated grade of the new thoroughfare. The jury was further informed by all appraisers that the change in layout, forcing the back of the property to become the front, was a consideration to be taken into account in determining the value of the property after the taking. Additionally, the jury viewed the property and traveled the relevant length of North 27th Street.

International, in its brief, concedes that it has no right to any specific traffic flow, noting: "Plaintiff concedes that there is no vested right in a landowner to the continued flow of traffic by his property so that where action is taken to reduce or eliminate that flow, such as closing a street or diverting traffic to another street, there is no liability." Brief for Appellant at 18. International recognizes that we have so held in a number of decisions, including *Rossitto v. City of Omaha*, 199 Neb. 260, 258 N.W.2d 126 (1977), *Deyle v. State*, 194 Neb. 36, 229 N.W.2d 565 (1975), *Verzani v. State*, 188 Neb. 162, 195 N.W.2d 762 (1972), and *Painter v. State*, 177 Neb. 905, 131 N.W.2d 587 (1964).

International, however, seeks to make a distinction by arguing that the taking did not result in a mere reduction or elimination of traffic but, rather, a denial of access to the existing traffic, and, therefore, the traffic count was relevant evidence which the district court should have permitted

International to offer in arriving at International's damages. In attempting to make this distinction International argues:

> However, that is simply not the situation here. There was neither a reduction of traffic nor a diversion of traffic from North 27th Street. Indeed, the City's own engineer testified that not only would there be no diversion of traffic from this improvement, but that it was anticipated there would be an immediate substantial increase in the traffic along North 27th. The trial court simply misunderstood the issues involved here.

Brief for Appellant at 18.

If, indeed, International was not entitled to damages for the total elimination of traffic, which International concedes, we fail to understand how it could be entitled to damages by reason of the fact that, while the traffic still flows by its property, it is not able to get the specific cars to leave the road and come directly onto its property but, rather, must direct the cars to an alternative means of access.

This is exactly what occurred in *Painter v. State, supra*. The State of Nebraska constructed a median down the middle of a road abutting onto plaintiffs' tavern property. The evidence disclosed that the project would prevent 65 to 70 percent of the tavern's customers from leaving the road and gaining access to plaintiffs' tavern. In refusing to permit plaintiffs to recover damages for the construction of the median, we said at 911, 131 N.W.2d at 591:

> The rule is the same as if the islands had been constructed without the taking of any property by eminent domain. [Citation omitted.]

> The situation may be summed up as follows: Property owners abutting upon a public thoroughfare have a right to reasonable access thereto. This right of ingress and egress attaches to the land. It is a property right as complete as ownership of the land itself. But as to damages claimed by reason of a change in the flow of traffic by placing medians in the center of a street, they result from the exercise of the police power by the state and are noncompensable as being incidental to the doing of a lawful act. As such, they are wholly unrelated to the

taking of the land for the purpose of widening the street and constitute no element of damage to the land remaining after the taking.

A case similar to the instant case is *Gillespie v. City of South Omaha*, 79 Neb. 441, 112 N.W. 582 (1907). Gillespie owned a tract of land abutting a heavily traveled thoroughfare which was closed in order to construct a viaduct. In affirming an award of damages to the property owner, we said:

In determining the amount of such damages, the jury may consider diversion of travel, inconvenience of access, and diminution of business carried on upon said property, *not as independent items of damage*, but for the purpose of determining the market value of the property before and after the construction of such improvement.

(Emphasis supplied.) (Syllabus of the court.) The building of the bridge which prevented cars from driving onto International's property directly from 27th Street was no different than the construction of a median which prevents cars from getting directly to property located across the median.

International was permitted to introduce evidence regarding the taking of ingress and egress and the loss of access occasioned by the project and was permitted to recover damages by reason thereof. What it was not permitted to do was to offer, as evidence of damages, specific traffic counts. If such evidence had been permitted, International would have been permitted to offer evidence of an independent item for which it was not entitled to recover damages.

The reason that the specific traffic counts were not relevant is because International is not entitled to damages for the traffic flow, but only for the damages caused by reason of the taking of access to the property itself. We believe that the district court committed no error in this regard.

That leaves us then with the last issue: whether instruction No. 7 was in error. Specifically, International contends that the district court erred in instructing the jury that

[i]n determining this question [the amount of damages] you must not take into consideration any conduct of the defendant that merely has the effect of changing the flow of traffic past the plaintiff's property, or that may require

persons to take a more circuitous or longer route to reach certain points on the plaintiff's property because of traffic regulations.

Again, we are unable to determine how this instruction can constitute error. Not only is the statement a correct statement of the law, see *Painter v. State*, 177 Neb. 905, 131 N.W.2d 587 (1964), but when the entire instruction is read, it is clear that there is no misstatement nor, as contended by International, is it confusing to the jury. Instruction No. 7 in its entirety reads as follows:

### INSTRUCTION NO. 7

The right of an owner of property abutting on a street to ingress and egress to and from his premises by way of the street is a property right in the nature of an easement in the street which he cannot be deprived of without compensation for his loss. The measure of the right of the owner of property abutting on a street to access to and from it by way of the street is reasonable ingress and egress under all the circumstances.

The plaintiff contends that it has been denied reasonable access from North 27th Street to its property by the taking of the defendant. The plaintiff is entitled to be compensated if it has been deprived of reasonable ingress to and egress from its property to North 27th Street under all the circumstances shown by the evidence.

In determining this question [the amount of damages] you must not take into consideration any conduct of the defendant that merely has the effect of changing the flow of traffic past the plaintiff's property, or that may require persons to take a more circuitous or longer route to reach certain points on the plaintiff's property because of traffic regulations.

If you find from a preponderance of the evidence that the plaintiff has been deprived of reasonable ingress to and egress from its property under all the circumstances, you should take this fact into consideration in determining the plaintiff's damages under Instruction No. 6. It is not, however, to be considered as a separate element of damage.

If you do not so find, then you should not take it into consideration in determining the plaintiff's damages.

Instruction No. 7 correctly advises the jury as to what it must find before International is entitled to recover damages by reason of being denied ingress and egress to the street abutting its property. See *Balog v. State*, 177 Neb. 826, 131 N.W.2d 402 (1964). We have regularly and consistently held that " '[i]n instructions to the jury, fragments, though open to criticism when considered by themselves, are not necessarily prejudicial to the complaining party, if the charge as a whole correctly states the issues and the law applicable to the pleadings and the evidence.' " *Phillips Petroleum Co. v. City of Omaha*, 171 Neb. 457, 474, 106 N.W.2d 727, 738 (1960). See, also, *Lansman v. State*, 177 Neb. 119, 128 N.W.2d 569 (1964).

We believe that when all of instruction No. 7 and the other instructions are read together, as they must be, they correctly and accurately reflect the law. There was no error.

The judgment of the district court is affirmed.

AFFIRMED.

WHITE and HASTINGS, JJ., concur in the result.