ZICKIE Z. MALOLEY, APPELLANT, v. THE CITY OF LEXINGTON, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

536 N.W.2d 916

Filed August 29, 1995.   No. A-94-611.

Earl D. Ahlschwede, of Mayer, Burns & Ahlschwede, for appellant.

Willard C. Weinhold, Lexington City Attorney, for appellee.

SIEVERS, Chief Judge, and IRWIN and MUES, Judges.

MUES, Judge.

Zickie Z. Maloley appeals the district court's order granting summary judgment to the City of Lexington, Nebraska (City). Maloley brought an inverse condemnation action against the City for damages he allegedly suffered as a result of the closing of 8th Street, which abutted his building, during the construction of a new jail facility located on 8th Street across from his building. Maloley filed a motion for partial summary judgment on the issue of liability alone. In response, the City filed a motion for summary judgment. The district court granted the City's motion upon finding that ingress and egress to and from Maloley's property could be had from other routes,

that he had suffered no more than an inconvenience common to the general public, and that he was not entitled to compensation. For the reasons stated below, we reverse and remand.

## STATEMENT OF FACTS

Zickie Z. Maloley is the owner of a commercial building and parking lot on land described as Lots 7, 8, 9, and 10, Block 16, the City of Lexington. The building and its parking lot are located at 8th and Washington Streets on the southwest corner of Block 16. The southeast portion of Block 16 is occupied by an ophthalmologist's business. Washington Street runs north and south; 8th Street runs east and west. The parking lot is accessed from the south through two driveways from 8th Street and from the north via an alley running east and west through Block 16, from Grant Street west to Washington Street. The alley is to the north of both the building and the parking lot. The building faces 8th Street, where prior to August 1991, parallel parking was available along a cut-in curb space. The west side of the building, which has no doors, faces Washington Street, where additional street parking is available. The east side of the building, which has a door, faces the offstreet parking lot.

In August 1991, the City authorized the closing of 8th Street to traffic between Grant and Washington Streets during the construction of a new jail facility adjacent to the Dawson County Courthouse and across the street from Maloley's property. Bill Podraza, the city manager for the City, attested in his affidavit that the street closing was deemed reasonably necessary to protect the public from the hazards of construction activity which would take place within the right-of-way area on the block of 8th Street.

Podraza attested that between August 1991 and August 1993, during working hours for the construction crew, the north half of 8th Street was open for passage of construction vehicles and that except when actually occupied by construction vehicles, there was direct vehicle access from 8th Street to the south side of Maloley's building and to the parking lot east of the building. Podraza also attested that during nonworking

hours, access to the north half of 8th Street was restricted by only a movable barricade and that the public sidewalk between Maloley's building and 8th Street remained unobstructed, providing pedestrian access to the building.

Photographs taken by Maloley over the 2-year period, however, appear to depict obstruction at various times of both the north half of 8th Street and the public sidewalk between Maloley's building and 8th Street. Some photographs show that the entire west end of 8th Street, which, if open, would intersect Washington Street, was blocked by construction barriers. Further, photographs taken on October 9 and November 11, 1991; on February 5 and 19, March 7, September 13, and December 17, 1992; and on February 9 and March 15 and 29, 1993, appear to depict a blockade of a parking lot entrance either by construction barriers or by various construction materials piled in front of the driveway entrance. Maloley stated in his deposition that his access to the east side of the building via the alley was occasionally blocked by cement trucks and that construction vehicles parked in his parking lot, without his permission, during the construction of the jail.

In his deposition, Maloley also stated that he erected the building in 1970 and ran a grocery store business in the building until 1979. In 1979, he sold the business, but not the building. The purchasers remained in the building, leasing the facility from Maloley for $3,500 per month. In 1981, the purchasers declared bankruptcy, and Maloley took possession of the building and the business equipment. Maloley then resold the business, the next purchaser remaining in the building and also paying $3,500 per month in rent until 1989, when he, too, declared bankruptcy. Maloley then repossessed the grocery store fixtures and building a second time. The building has been vacant since 1989.

Maloley testified that from 1989 until 1993 he has attempted to rent or sell the building to about six different parties. Maloley stated that each party balked after examining the property and asked him when 8th Street would be opened. One of the potential lessees talked to Maloley about turning the building into a steakhouse. Maloley stated that his prospective tenants pursued the venture, including the drawing of

architectural plans, but, Maloley testified (without objection), the prospective lessee was told by someone associated with the county jail construction crew that 8th Street would never be reopened. As a result, Maloley stated, the prospective lessee ended negotiations with Maloley because of concerns regarding the closing of 8th Street.

On August 4, 1993, Maloley filed a suit for money damages against the City, alleging that barricades set up during the construction unreasonably hampered ingress and egress to and from the building and that building materials stored on the sidewalk hampered ingress and egress to and from the building. Maloley alleged that as a result of the City's actions, he was hindered and prevented from acquiring a new tenant in the premises and as a result he suffered loss of rental income of $64,538 and that his property had suffered a reduction in market value of $70,000—all as a result of the City's actions which constituted a taking without due process and without payment of just compensation contrary to the Nebraska Constitution.

Maloley filed a motion for partial summary judgment on the issue of liability only, and the City responded with a motion for summary judgment seeking dismissal of Maloley's petition. The City's motion was granted. The district court found that while access to Maloley's building on the 8th Street side was blocked during construction, total access to his property was not impeded as access could be had through the alley, on the Washington Street side, and via the sidewalk immediately in front of the building. The court stated, "The only result of the closing of Eighth Street on the property, was the inconvenience of taking away some parking stalls on Eighth Street in front of the building owned by the Plaintiff. Such inconvenience was one borne by the general public, as well as borne by the Plaintiff." Maloley appeals.

## ASSIGNMENTS OF ERROR

Maloley alleges the district court erred when it (1) determined that the only result of closing 8th Street was the inconvenience of taking away the parking spaces in front of Maloley's building on that street, (2) found that the inconvenience suffered by

Maloley was the same borne by the general public, and (3) found that the City's actions did not result in any compensable damages under Neb. Const. art. I, § 21.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *LaBenz Trucking v. Snyder*, 246 Neb. 468, 519 N.W.2d 259 (1994). On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *LaBenz Trucking, supra.*

## ANALYSIS

Upon appeal of the district court's grant of summary judgment to the City, we must view the evidence in a light most favorable to Maloley, and give him the benefit of all reasonable inferences deducible from the evidence. See *LaBenz Trucking, supra.*

The evidence before this court reveals a factual dispute regarding whether entry to Maloley's parking lot was blocked during construction, whether the 8th Street sidewalks which ran past the front of the building were blocked at various times, and to what extent 8th Street was open on the north side during the period of construction. Viewing the evidence in a light most favorable to Maloley, there is evidence that ingress and egress to and from Maloley's parking lot and the building, via the 8th Street sidewalk, were blocked for significant periods of time during construction. Thus, we do not agree with the district court that the evidence shows that the only result of the closing of 8th Street, as it pertained to Maloley's property, was the loss of some parking stalls on 8th Street in front of the building or

with the court's conclusion that Maloley suffered only an inconvenience in common with the general public. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Healy, supra.*

There appears to be no question that ingress and egress to and from Maloley's property were affected when 8th Street was closed. The real question presented to the district court was a legal one of whether the temporary obstructing and closing of 8th Street amounted to a compensable injury under Neb. Const. art. I, § 21.

### *"Takings" Clause Under Nebraska Constitution.*

■ Under Neb. Const. art. I, § 21, no person's property shall be taken or damaged for public use without just compensation. As stated in *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 684, 515 N.W.2d 401, 405 (1994), an inverse condemnation action such as Maloley's is "a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings." The language of Nebraska's constitutional provision prohibits both the *taking* and the *damaging* of property without just compensation. Thus, the language is broader than that of the federal constitutional provision, U.S. Const. amend. V, and recovery under the state provision has been allowed for damages caused by *temporary takings*, as well as permanent takings. *Whitehead Oil Co., supra.*

### *Abutting Owner—Ingress and Egress.*

■ The right of an owner of property which abuts on a street or highway to have ingress to and egress from his premises by way of the street is a property right in the nature of an easement in the street and the owner cannot be deprived of such right without due process of law and compensation for loss. *Balog v. State*, 177 Neb. 826, 131 N.W.2d 402 (1964). The measure of the right of the owner of property abutting a street to access to and from the property by way of the street is reasonable ingress and egress under all the circumstances. *Id.* Not only does the owner of property abutting a street possess

the right to the use of the street along with other members of the general public, the owner also possesses a private right or easement for the purpose of ingress and egress to and from his property which is a special right not shared with the general public. *Id.* When an

> "owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just [compensation] under the circumstances. . . . Other means of access may mitigate damages . . . but does not constitute a defense to the action however. . . ."

(Citations omitted.) *Id.* at 837, 131 N.W.2d at 410.

*Impairment of Access/Question of Fact.*

██ *Balog* confirmed that whether the right of access has been destroyed or substantially impaired is a question of fact which must be determined by the particular facts in each case. The trier of fact determines whether the access to the abutting owner's property remaining after the taking is reasonable under all the circumstances. *W.E.W. Truck Lines, Inc. v. State,* 178 Neb. 218, 132 N.W.2d 782 (1965). If the trier of fact finds that the means of ingress and egress has been substantially impaired and that access to the property was not reasonable under all the circumstances, the loss of access would be used, along with other consequential damages, to determine the value of the remaining land after the taking. *Id.*

In *Balog, supra,* the court found that the construction of a frontage road as a means of access to an arterial roadway, Cornhusker Highway, after the plaintiffs' direct means of ingress and egress to and from the highway had been impaired, may be used to show that the damages the plaintiffs suffered as a result of the loss of the easement to the highway which abutted their property were mitigated. However, the construction of the frontage road did not, as a matter of law, deprive the landowners of their right to damages.

██ Similarly, in *International Mov. & Stor. v. City of*

*Lincoln*, 226 Neb. 213, 410 N.W.2d 483 (1987), the court recognized the plaintiff's right to recover damages as a result of being deprived of ingress and egress to and from 27th Street as a result of the construction of a viaduct which elevated the street in front of the plaintiff's business and deprived him of direct access to the street. The city of Lincoln constructed a new street to serve as a service road to the plaintiff's business, but the road ran to the back of the building. The front of the building faced a solid concrete wall created by the viaduct. The *International Mov. & Stor.* court found that the plaintiff was not entitled to introduce evidence of reduced traffic flow, because landowners have no vested right to the continued flow of traffic by their property. Instead, the court noted that damages as a result of a destruction or interference with ingress and egress to and from a street via abutting property are measured by consideration of " 'diversion of travel, inconvenience of access, and diminution of business carried on upon said property, not as independent items of damage, but for the purpose of determining the market value of the property before and after the construction of such improvement.' " (Emphasis omitted.) *Id*. at 218, 410 N.W.2d at 486 (quoting *Gillespie v. City of South Omaha*, 79 Neb. 441, 112 N.W. 582 (1907)).

While the City cites *Rossitto v. City of Omaha*, 199 Neb. 260, 258 N.W.2d 126 (1977); *Kraft & Sons, Inc. v. City of Lincoln*, 182 Neb. 187, 153 N.W.2d 725 (1967); and *Fougeron v. County of Seward*, 174 Neb. 753, 119 N.W.2d 298 (1963), in support of its argument that Maloley is not entitled to recovery, each of the cases is distinguishable, for in each case the property owner seeking compensation did not own land directly abutting the closed street in question and thus did not have the private right or easement of ingress and egress onto the street as recognized in *Balog*. In each case, the street closing caused the landowners and their clients to take more circuitous routes to reach the landowners' property, but the Nebraska Supreme Court found in each case that the landowners suffered no greater inconvenience than that suffered by the general public. See, *Rossitto, supra* (closing of street which ran to and ended at street abutting plaintiff's property only created inconvenience because owner and others entering or leaving property must

take more roundabout way, which was injury suffered by public at large); *Kraft & Sons, Inc., supra* (owner of business which did not abut closed street suffered from restricted travel as result of closing, but inconvenience suffered not different in kind from that sustained by general public); *Fougeron, supra* (owner of land which did not abut intersection of county road and Interstate was not damaged in manner different from public at large by barricading of county road exit onto Interstate). In contrast, in the case at hand, Maloley's land abuts the closed street in question.

The trial court cited *Kraft* for the proposition that even an abutting landowner has no vested interest in the flow of traffic past his premises. That is an accurate statement of Nebraska law. However, Maloley does not complain solely because traffic could not *flow* on 8th Street *past* his building. Rather, his suit seeks damages for an unreasonable impairment of access to his property. See, e.g., *International Mov. & Stor. v. City of Lincoln*, 226 Neb. 213, 410 N.W.2d 483 (1987) (recognizing distinction and allowing recovery for impairment of access and not obstructed flow of traffic).

The City would have us determine, as a matter of law, that Maloley's access was not "unreasonably" impaired because, inter alia, he had access to the building through the alley on the north and the sidewalks on the west and east of the building. However, the evidence conflicts as to what Maloley was deprived of and how the blockage impacted his access. We cannot say that depriving a retail establishment of access to a street is per se reasonable when said establishment's front entrance, parking stalls, and parking lot driveways border that street. If the only remaining access to Maloley's building, or the parking lot which services it, is from an alley behind the building, or from a street located on a side of the building which has no entrance, with the sidewalk between 8th Street and the main entrance piled high with debris and construction materials, it might be inferred by some fact finder that the property suffered more than an "inconvenience" and an injury different in kind from that suffered by the general public.

As further support for the conclusion that access was not unreasonably impaired, the City points to the fact that

Maloley's building was vacant during the street closing and 2 years before the closing and that the City had agreed, shortly after the closing, to reopen the street if the building became occupied. We believe those facts are relevant to the issue of damages and mitigation, but are not determinative of whether access was or was not unreasonably impaired. Although the City's offer to reopen is not in dispute, Maloley testified that he had asked the City to reopen the street on various occasions, presumably without success. As to the vacancy of the building, it is of obvious import to this case. It would be silly to suggest otherwise. As an illustration, we believe it is safe to assume that an owner of a thriving fast food hamburger chain establishment that had its access impaired, as did Maloley, would be able to prove greater damage than could one whose access to an empty lot was similarly impaired. Yet, damages for interference with ingress and egress to and from a street from abutting property are generally measured by considerations of market value loss. See *International Mov. & Stor., supra.* Diminution of business is one factor in determining that measure, not an independent item of damage. Similarly, the lack of business taking place on Maloley's property before or during the alleged impairment of access is a factor in determining damages, but not conclusive on the issue. However, see *Whitehead Oil Co. v. City of Lincoln,* 245 Neb. 680, 515 N.W.2d 401 (1994), holding that in the case of temporary *regulatory* takings, the loss takes the form of an injury to the property's *potential* for providing income or an expected profit.

While we express no opinion as to the appropriate measure of damages in this case, should it be determined by the fact finder that Maloley's rights of access have been unreasonably impaired, we do note that Maloley offered evidence that the market value of his land was $350,000 before the temporary street closing as well as after it was reopened and $131,250 during the approximately 2-year period of the closing. These were his opinions, as owner of the land. He is certainly qualified to express such opinions. See, e.g., *Langfeld v. Department of Roads*, 213 Neb. 15, 328 N.W.2d 452 (1982). These values were based in part on appraisals from experts identified both in his deposition and in his answers to

interrogatories.

If or how Maloley translates the evidence of temporary reduction in value or the prior rental income from the building into a legal measure of damages is not our concern at this juncture. The City does not assert that the evidence is incapable of rising to such level, only that access to the property was not unreasonably impaired. Viewing the evidence most favorably to Maloley, as we must, we determine only that there are genuine issues of material fact regarding whether Maloley's access was unreasonably impaired which were necessarily decided by the court's granting of summary judgment.

## CONCLUSION

Whether Maloley's right of access was temporarily "unreasonably impaired" is a fact question which should not have been decided by summary judgment. While other means of accessing his building and the parking lot were available throughout the street closing, such evidence does not bar Maloley's right to compensation as a matter of law. See *Balog v. State*, 177 Neb. 826, 131 N.W.2d 402 (1964). There were genuine issues of material fact in this case, and the district court's granting of summary judgment to the City was erroneous.

REVERSED AND REMANDED.